CAHILL et al., Appellants,

v.

VILLAGE OF LEWISBURG, Appellee.

[Cite as *Cahill v. Lewisburg* (1992), 79 Ohio App.3d 109.]

Court of Appeals of Ohio,
Preble County.

No. CA91–07–013.

Decided April 6, 1992.

*Ruschau, Lehman & Hobbs* and *H. Steven Hobbs,* for appellants.

*Hall, Tucker & Fullenkamp* and *Michael L. Tucker,* for appellee.

*Per Curiam.*

This cause came on to be considered upon a notice of appeal, the transcript of the docket and journal entries, the transcript of proceedings and original papers from the Preble County Court of Common Pleas, and upon the briefs and oral arguments of counsel. Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App.R. 12(A) as follows:

Plaintiffs-appellants, John P. Cahill and Bernard J. Welbaum, appeal a decision of the Preble County Court of Common Pleas in favor of defendant-appellee, village of Lewisburg ("the village"). Cahill is the owner of several pieces of property located within and just outside the village which are served by the village water department. Cahill rented the property to various commercial and residential tenants, including his wife, who operated a beauty salon. Welbaum also owns a piece of property located in the village which is served by the village water department. Welbaum resided on the property and leased the downstairs portion of his residence to tenants.

The village is a municipality which has no charter and is organized pursuant to the Ohio Revised Code. Prior to January 1, 1990, the village billed for water on a per unit basis. This per unit system meant that a building which was occupied by the owner and one tenant constituted two billable units, a building occupied by three tenants constituted a three-unit building, and so on. Typically, an individual who owned and lived in a residential property, but also conducted business out of this property, was billed for one unit, although this was not always the case. Each unit was charged a base rate for water with an additional charge for excess usage, *i.e.,* usage above that included in the base rate charge. The general result of this system was that buildings with more units were charged more for water consumption. The exact difference in the charge depended on the number of units and the actual usage.

The village has used the per unit system for decades. However, prior to January 1, 1990, the per unit procedure was not explicitly recognized by any specific ordinance or regulation enacted by the village. The village's only written evidence of the rate system in effect prior to January 1, 1990 is a

booklet entitled "Lewisburg Waterworks, Regulation and Rates," which was apparently issued by the "Board of Trustees of Public Affairs of the Village of Lewisburg, Ohio." This booklet contains a description of a per unit billing system very similar to the per unit system used in the village prior to January 1990.[1] Through scientific testing, the city found that the paper in the booklet was manufactured prior to 1950, although it was impossible to tell when the booklet was printed.

In the late 1980's, appellants began to complain that the per unit system was unfair, that it was not authorized by ordinance, and that it was not being uniformly applied by the village. Eventually, the village council appointed a committee which conducted a two-and-one-half-month study analyzing billing systems for water usage. The committee recommended that the per unit system be retained and presented a proposed ordinance to the village council. The committee recommended that the per unit system be retained because the per unit system was the most equitable way to spread the cost of the operation of the system to all users of that system. The committee's proposed ordinance, numbered 1989–22, was enacted by the village council and became effective January 1, 1990. The ordinance provided a specific definition of the term "unit" similar to that which had been previously applied under the uncodified system.[2]

On December 29, 1989, appellants filed a complaint alleging that the manner in which the village charged for water prior to January 1, 1990 was unconstitutional because it violated their due process and equal protection rights, that

---

**1.** The booklet stated: "Minimum water rates $8.00 per year for each family or place of business. For each additional family or place of business occupying the same building or the same lot and using water from the same tap, an additional charge of $6.00 per annum will be made. Each family or place of business is entitled to 4,000 gallons of water or less. For all excess above 4,000 gallons, a charge of ten cents for each additional 1,000 gallons will be made."

**2.** The ordinance provided:
"Units per billable account" shall mean the sum total of owner occupied and tenant usages the real estate has on it, whether residential, agricultural, commercial, governmental, or otherwise, subject to the following:
"(1) Owner occupied usage shall count as one unit and only one unit, irrespective of type or multiple types.
"(2) Tenant usage shall count as one unit per tenancy, irrespective of occupancy or type(s) and irrespective of whether the owner actually receives or has the right to receive and/or charge a periodic rental fee. Children, grandchildren, parents, and grandparents, and the spouses of children, grandchildren, parents, and grandparents of owner(s), who live with the owner(s), shall not be construed as a tenant, unless they pay the owner(s) a periodic rental fee.
"(3) Structures and residential facilities housing transient guests shall be considered as an owner occupied use; however, residents of such structures and residential facilities for a week or more in duration shall not be considered as transient guests."

the pre–1990 billing method was not authorized by law, and that ordinance 1989–22 was unconstitutional and violative of their equal protection rights. Appellants sought both compensatory and punitive damages and a declaration that ordinance 1989–22 was unconstitutional.

A bench trial was held on March 27, 1991, and April 16, 1991. Appellants presented evidence that the billable unit concept was not always applied uniformly. In particular, they presented evidence that some owners occupying property for residential and business purposes were charged for two units, while others were charged for one unit. Prior to the enactment of the ordinance, the operation of the system relied on owners to report the number of their tenants and when the tenants came and went, as well as on general knowledge in the community. Not surprisingly, the system was not particularly accurate and numerous mistakes occurred. Appellants presented evidence that the mayor and a couple of other village employees, while operating businesses in their residence, were billed as one unit, while other owners were billed as two units. However, the village presented evidence that its officials never intentionally billed water rates in a discriminatory manner.

After hearing the evidence, the trial court concluded that neither appellants' equal protection nor due process rights were violated by the pre–1990 system nor by the system under the ordinance. The court also concluded that the per unit system prior to January 1990 was properly authorized. This appeal followed.

 Appellants present five assignments of error for review. In their first assignment of error, appellants state that the trial court erred "in finding the per unit system was authorized by law." Appellants argue that because there was no ordinance, bylaw, rule or regulation specifically authorizing the per unit system prior to January 1990, the village had no authority to use the per unit system. We find this assignment of error is not well taken.

R.C. 735.29 provides:

"The board of trustees of public affairs appointed under section 735.28 of the Revised Code shall manage, conduct, and control the waterworks, electric light plants, artificial or natural gas plants, or other similar public utilities, furnish supplies of water, electricity, or gas, collect all water, electric, and gas rents or charges, and appoint necessary officers, employees, and agents.

"The board may make such bylaws and rules as it determines to be necessary for the safe, economical, and efficient management and protection of such works, plants, and public utilities. These bylaws and rules, when not repugnant to municipal ordinances or to the constitution or laws of the state, shall have the same validity as ordinances."

■ R.C. 735.29 states that the village board of public affairs *"shall manage, conduct, and control the waterworks * * *."* (Emphasis added.) It also states that "the board *may* make such bylaws and rules as it determines to be necessary * * *." (Emphasis added.) The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive or discretionary, at least where there is nothing in the language or in the sense or policy of the provision to require an unusual interpretation. The word "shall" is usually interpreted to make the provision in which it is contained mandatory, especially if frequently repeated. Ordinarily, the words "shall" and "may," when used in statutes, are not used interchangeably or synonymously. *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 107, 56 O.O.2d 58, 60, 271 N.E.2d 834, 837; *State ex rel. John Tague Post No. 188, Am. Legion v. Klinger* (1926), 114 Ohio St. 212, 215, 151 N.E. 47, 48. The use of the word "shall" indicates that the board of public affairs has an absolute duty to manage the waterworks. In carrying out this duty, it may implement written bylaws and rules, but the decision to do so is discretionary. While the adoption of a bylaw or rule certainly would have been a better practice, we cannot conclude that the lack of any rule or bylaw somehow renders the per unit system void.

Additionally, the village admitted that it could not locate any formal ordinance or regulation authorizing the per unit system prior to January 1, 1990. The only written documentation the village could find was the booklet describing a per unit system similar, although not identical, to the system in use in the village for many years. The trial court concluded that this booklet "[was] evidence of the village's adoption of the per unit system." The court went on to state "[b]eyond that, the Village has clearly utilized such a system as far back as anyone involved in this case can remember. Even if the authority were questionable, the proper remedy would be to order the Village to comply by formally adopting a procedure. The village has already accomplished this task." We agree. Accordingly, appellants' first assignment of error is overruled.

■ In their second assignment of error, appellants state that the trial court erred in "failing to find the equal protection rights of appellants have been violated through the village's enforcement of its billing customs prior to January 1, 1990." Appellants argue that the per unit system was applied in a discriminatory manner. We find this assignment of error is not well taken.

■ The guarantee of equal protection of the laws means that "no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances." *State v. Gledhill* (1984), 13 Ohio App.3d 372, 373, 13 OBR

454, 455, 469 N.E.2d 932, 934. "The Equal Protection Clause does not * * * require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious." *Avery v. Midland Co. Texas* (1968), 390 U.S. 474, 484, 88 S.Ct. 1114, 1120, 20 L.Ed.2d 45, 53. The state "may not draw distinctions between individuals * * * that are irrelevant to a legitimate governmental objective." *Lehr v. Robertson* (1983), 463 U.S. 248, 265, 103 S.Ct. 2985, 2995, 77 L.Ed.2d 614, 629. These principles demand, at a minimum, that a municipality apply its laws in a rational and non-arbitrary way. *Brandon v. Dist. of Columbia Bd. of Parole* (C.A.D.C. 1987), 823 F.2d 644, 650.

"Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution." *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, 227–228.

 However, not every divergence in the application of the law gives rise to an equal protection claim. *Brandon, supra,* at 650. "The unlawful administration by [government] officers of a [law] fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden v. Hughes* (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497, 503. The good faith of government officials and the validity of their actions is presumed; the burden of proof to show intentional and purposeful discrimination is upon the complaining party. *Id.; Sunday Lake Iron Co. v. Wakefield Twp.* (1917), 247 U.S. 350, 353, 38 S.Ct. 495, 495, 62 L.Ed. 1154, 1156.

The trial court acknowledged that over the years not all residents using water provided by the village were treated equally. However, the court specifically found that there was "no intentional or systemic discrimination." There was competent, credible evidence in the trial court to support this factual determination and, as a reviewing court, we will not disturb it. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. While appellants did present evidence of disparities in the way the per unit billing system was applied, they failed to meet their burden of proof to show that these disparities were the result of intentional and purposeful discrimination; instead, the evidence showed the

disparities were due to a system that was not always efficiently administered. Accordingly, the trial court did not err in concluding that appellants' rights to equal protection were not violated, and appellants' second assignment of error is overruled.

In their third assignment of error, appellants state that the trial court erred "in failing to find Ordinance 1989–22 was unconstitutional and therefore void." Appellants argue that the ordinance on its face violates their rights to equal protection and discriminates in favor of "owner-resided businesses" by limiting their billing and against landlords who operate residential properties, even if some tenants receive no water service. We find this assignment of error is not well taken.

We begin by noting that all legislative enactments, whether of a municipality or state, enjoy a strong presumption of validity. *Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 377, 15 O.O.3d 450, 451, 402 N.E.2d 519, 521. The party challenging a legislative enactment bears the burden of demonstrating that it is unconstitutional. *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 71, 9 OBR 273, 274, 458 N.E.2d 852, 854–855, appeal dismissed (1984), 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 814. Moreover, a court will liberally construe legislation to uphold its constitutionality. *Oregon v. Lemons* (1984), 17 Ohio App.3d 195, 196, 17 OBR 385, 386, 478 N.E.2d 1007, 1009–1010.

A statutory classification which involves neither a suspect class nor fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitution if it bears a rational relationship to a legitimate governmental interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 182–183; *Brandon, supra,* at 650. The parties agree that appellants are not members of a suspect class. Further, we find no authority to support appellants' contention that this case involves a fundamental right. Appellants have never been denied water service; their claim is that they have been charged more for water service than others in the community that are similarly situated. Since there is no suspect class or fundamental right involved, we will apply the rational basis analysis. *Cty. Commrs.' Assn. v. Pub. Util. Comm.* (1980), 63 Ohio St.2d 243, 246, 17 O.O.3d 150, 152, 407 N.E.2d 534, 536.

The evidence showed that the purpose of the per unit system was to spread the cost of the operation of the water system to all users of water within the

village. It was contemplated that landlords, like appellants, could pass the cost on to tenants in the form of rent, or they could separately meter each unit. Appellants have failed to show that this is not a legitimate governmental interest. Further, they failed to show that the ordinance implementing the per unit system did not bear a reasonable relationship to this interest. Accordingly, appellants' third assignment of error is overruled.

In their fourth assignment of error, appellants state that the trial court erred in "failing to find the due process rights of appellants were violated by the billing procedure used prior to January 1, 1990." Appellants argue that the number of units for which they would be billed was determined arbitrarily, with no avenue for a review, or for an opportunity to be heard. We find this assignment of error is not well taken.

The Fourteenth Amendment protects against deprivation of a constitutionally protected interest without due process of law. When the claim of denial of due process rests on the deprivation of a property interest alone, the constitutional right invoked is the procedural due process right to notice and a hearing. *Shirokey v. Marth* (1992), 63 Ohio St.3d 113, 118, 585 N.E.2d 407, 411; *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34–35, 550 N.E.2d 456, 458–460. "When the interest is purely economic, the Constitution demands only that the challenging party be given a meaningful opportunity to be heard." *1946 St. Clair, supra,* at 36, 550 N.E.2d at 460. When the state provides adequate post-deprivation state tort remedies for unauthorized deprivations of property, the state has provided all the process required under the Fourteenth Amendment. *Id.; Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 513 N.E.2d 288, paragraph four of the syllabus.

The record shows that appellants complained to village officials about the per unit system. They attended meetings of the village council and the board of public affairs. Their complaints were heard. While it is true that prior to the enactment of the ordinance they had no avenue for review, they nevertheless had the opportunity to pursue a state court remedy. We agree with the trial court when it stated "[appellants] have prosecuted this action in an attempt to rectify what they still believe was an unconstitutional deprivation of their property. As this case illustrates [appellants] have a remedy. They have sought and obtained numerous account records, the testimony of village officials and an opportunity to be heard." In sum, appellants had a forum in which to assert their claims, *Cooperman, supra,* at 201, 513 N.E.2d at 298–

299, and they were not denied due process of law. Accordingly, appellants' fourth assignment of error is overruled.

In their fifth assignment of error, appellants state that the trial court erred in failing to allow them the opportunity to cross-examine the assistant village clerk about the booklet describing the per unit system and that this denial resulted in the violation of their due process rights. We find this assignment of error is not well taken.

The admission or exclusion of relevant evidence rests within the discretion of the trial court. An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. Appellants, in cross-examination of the village's assistant clerk, requested the clerk to interpret that portion of the booklet relating to the per unit system. However, it is clear the assistant village clerk was not qualified to interpret the document and the document itself was admitted into evidence only for the purpose of showing how long the unit system had been used within the village. Under the circumstances, we cannot conclude that the trial court's decision to exclude that testimony was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 481–482, 450 N.E.2d 1140, 1141. Accordingly, appellants' fifth assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

KOEHLER, P.J., WILLIAM W. YOUNG and WALSH, JJ., concur.