CITY OF AURORA, Appellee,

v.

SEA LAKES, INC., Appellant.

[Cite as *Aurora v. Sea Lakes, Inc.* (1995), 105 Ohio App.3d 60.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 94–P–0035.

Decided June 27, 1995.

*David M. Benjamin,* Aurora City Law Director, for appellee.

*Jacob F. Hess, Jr.,* for appellant.

NADER, Judge.

This appeal has been placed on the accelerated calendar and is submitted to the court upon the record, briefs, and oral arguments of the parties.

Appellant, Sea Lakes, Inc., operates a recreational travel park under the name Sea Lakes Resort pursuant to conditional zoning certificates issued by appellee, the city of Aurora. The park has slightly fewer than three hundred improved campsites. Some of these campsites have connections to the park sewage collection system. Park facilities include amenities such as bathhouses with toilet and shower facilities, a maintenance building, swimming pools, lakes, laundry facilities, a recreational game room, horseshoe courts, a baseball field, a convenience store, a clubhouse, and volleyball and shuffleboard courts. Bathhouses and laundry facilities are served by the campground sewage collection system.

Appellant has two categories of patrons. The first are overnight campers who pay a daily fee for the rental of a campsite and the use of most park facilities. The second are owner-members who purchase undivided interests in the park as tenants in common. Each interest is conveyed by deed, which is subject to restrictive covenants. In addition to this one-time payment, members are required to pay an annual fee, which is applied to the yearly costs of operation and maintenance of the campground. Pursuant to the purchase agreement and

restrictive covenants, failure to pay the annual fee results in a forfeiture of the right to enter the property and use the facilities until the fee is paid. It is undisputed that $120,806.79 in annual fees from park members were collected in 1992.

Appellee levies a five-percent admission tax upon "places" within the city that charge "admissions fees." Appellant collects and pays this tax with respect to revenues from overnight campers. Appellant has refused, however, to accede to appellee's demand to pay, as an admission tax, five percent of the annual fees received from park members.

The campground's sewage system empties into the public sewer system. Appellee charges a fee for property that is connected to the public system based upon the amount of sewage discharged into the public system. Originally, appellant's sewage discharge was estimated from the park's electrical usage. Appellee determined, however, that this method was inaccurate and therefore informed appellee that it was obligated to purchase, install and maintain a sewage flow meter. Appellant initially objected to the requirement that it pay for the meter.

Appellee filed a complaint in the Portage County Court of Common Pleas on December 30, 1992, setting forth two causes of action. For its first cause of action, appellee sought an order for appellant to pay the admission tax on the annual fees received from members for the year 1992 and thereafter. The second cause of action sought an order requiring appellant to buy, install, and maintain a sewage flow meter. Appellant filed an answer, and the matter was heard before a referee on November 17, 1993. On December 16, 1993, appellee filed a copy of the transcript of the hearing.[1] The referee issued his report on February 10, 1994. Appellant filed objections to the referee's report on February 16, 1994. On April 7, 1994, the trial court adopted the referee's report and recommendations and entered judgment accordingly.

Appellant has timely appealed, and presents five assignments of error for review by this court:

"1. The judgment that the annual maintenance fee paid by the owners and purchasers of undivided fee interests in the Sea Lakes, Inc., land is subject to the five percent (5%) admission tax levied by Aurora Ordinance Section 185.03 is contrary to law.

"2. The judgment that the annual maintenance fee paid by the owners and purchasers of undivided fee interests in the Sea Lakes, Inc., land is subject to the

---

1. No original certified copy of the transcript of proceedings was filed. Both parties have relied upon and referred to the photostatic copy of the transcript in the trial court and on appeal. Accordingly, any objection to the transcript has been waived.

five percent (5%) admission tax levied by Aurora Ordinance Section 185.03 is against the manifest weight of the evidence.

"3.    The trial court erred to the prejudice of defendant-appellant in overruling its motion to dismiss the second count of the complaint at the close of plaintiff-appellee's case.

"4.    The judgment that Aurora has the authority to compel Sea Lakes, Inc., to purchase, install, and maintain a sewage flow meter is contrary to law.

"5.    The judgment that Aurora has the authority to compel Sea Lakes, Inc., to purchase, install, and maintain a sewage flow meter is against the manifest weight of the evidence."

Appellant articulates three arguments in its first assignment of error.

█    In its first argument, appellant contends that appellee failed to introduce evidence or produce for judicial notice any city ordinance imposing an admission tax.   Civ.R. 44.1(A)(2) provides in part:

"A court may * * * take judicial notice of * * * a municipal ordinance within the territorial jurisdiction of the court without advance notice in the pleading of a party or other written notice."

Appellant cited Chapter 185 of the Aurora City Ordinances during the hearing before the referee.   Pursuant to the instructions of the referee, and without objection thereto, a complete copy of the chapter was attached to appellant's posthearing brief.   The court could take judicial notice of the ordinances at issue as the city is within its territorial jurisdiction.

In its second argument, appellant asserts that its property is not a "place" as defined in Aurora City Ordinances 185.02.

█    Aurora City Ordinances 185.03 levies a tax of five percent of the admission charge paid for admission to any public performance, and for the right or privilege to use any golf course.   Aurora City Ordinances 185.03(b) and (c).   The ordinance further imposes the following tax:

"(a) A tax of five percent of the admission charge paid for admission to any place, including admission by season ticket or subscriptions or fee for the privilege of using any facility."

"Place" is defined by Aurora City Ordinances 185.02(c), which provides:

" 'Place' includes, but is not restricted to, theaters, dance halls, amphitheaters, auditoriums, stadiums, athletic pavilions and fields, golf courses, baseball and athletic parks, circuses, side shows, swimming pools, outdoor amusement parks and such attractions as merry-go-rounds, Ferris wheels, dodgems, roller coasters and observations towers owned or operated by any person."

Campgrounds are not included in the definitional list, but the list is expressly nonexclusive. The referee noted in his report that several of the facilities offered by appellant are included in the list: swimming pools, baseball and other athletic courts and fields. Moreover, evidence was presented that appellant sponsors dances in its clubhouse from time to time.

Appellant's property, unlike an apartment or condominium complex, is zoned for recreational use. It offers a myriad of recreational facilities much like an amusement park. Common to all places mentioned in the ordinance is their nature as recreational facilities.

A review of the exhibits confirms the findings and conclusions adopted by the trial court. The warranty deed executed by each member states that the member is granted an individual 1/2000 interest in the property. The agreement for deed signed by each member describes the nature of the interest to be conveyed:

"The Buyer understands and agrees that acquiring undivided interest in the premises is solely for the recreational enjoyment of the Buyer and the Buyer's family and guests and not for investment opportunity, resale or profit; that this ownership has not been represented or sold as an investment opportunity; that the only ownership interest acquired is in Phase 1 of Sea Lake Resort described above, that this ownership does not entitle the Buyer to participate in any income or other distribution, or ownership of any of the business, facilities or property of Sea Lakes, Inc., or Sea Lake Resort, other than as described above, or to vote on any aspect relating to or to participate in any other way in the management of or business of Sea Lakes, Inc., or Sea Lake Resort."

The declaration of restrictions and covenants incorporated by the warranty deed similarly provides at section 8(b):

"Campsites and rental units within Phase 1 and elsewhere within land owned by Sea Lake are intended for use and occupancy for recreational purposes only and not for residential purposes."

We conclude that the trial court did not err in finding appellant's property to be a "place" within the meaning of Aurora Ordinances 185.02.

Appellant's third argument is that the annual fee paid by members is not an "admission charge" within the contemplation of Aurora City Ordinances 185.02(a).

This provision states in part:

" 'Admission charge' means the charge made for the right or privilege to enter into a place, or the charge or fee paid for the use of any facilities or grounds including the amount charged or paid as annual membership dues to any club or organization, or charge or fee charged or paid to use any facilities for a season or

longer, provided, however, that if such charge includes rental of property or for a service such rental or service charge shall be taken to be an admission charge."

The referee reviewed the exhibits, including the deed restrictions, and found that the annual fee required to be paid by members was a charge for the right to enter the campground and for the use of its facilities and grounds. Thus, the referee concluded, and the trial court agreed, that the annual fee qualifies as an admission charge under Aurora City Ordinances 185.02(a).

Section 9 of the declaration states:

"Each owner, except Sea Lake, shall be required to pay to Sea Lake an annual resort fee set by Sea Lake for fees and expenses in Phase 1 and for the availability and use of the resort recreational facilities. This fee shall be paid whether or not the owner uses the property, facilities, or services that are available, and the owner shall not be permitted to use the property, facilities or services until all annual resort fees are paid."

Section 16 further provides:

"Sea Lake may suspend all occupancy rights and all other rights of any owner during the period of any continuing violation of any provision(s) of this Declaration and/or the provision(s) of any rule or regulation by such owner, any member of his family or any of his guests."

The judgment of the trial court that the annual fee paid by members of appellant is subject to appellee's admission tax is not contrary to law. The first assignment of error lacks merit.

Appellant's second assignment of error asserts that the judgment of the court that the annual fees are subject to the admission tax is against the manifest weight of the evidence. However, with respect to this cause of action, appellant did not object to the factual findings of the referee in its objections to the referee's report. Accordingly, appellant may not challenge on appeal the court's adoption of the referee's factual findings. Civ.R. 53(E)(4). We add that appellant does not raise any disputed issue of fact in support of its assignment of error but, rather, restates its argument under the first assignment. The second assignment of error is devoid of merit.

In its third assignment of error, appellant argues that the referee should have dismissed the claim relating to the sewage flow meter at the conclusion of appellee's presentation of evidence because appellee did not introduce into evidence "in accordance with Articles 9 or 10 of the Rules of Evidence or Civil Rule 44" the ordinances under which appellee relied in support of its claim. As previously stated, Civ.R. 44.1(A)(2) permitted the court to take judicial notice of the applicable local authority. The third assignment of error is without merit.

Appellant contends in its fourth assignment of error that the judgment of the trial court that appellee may compel it to purchase, install, and maintain a sewage flow meter is contrary to law. Appellant presents two separate arguments under this assignment of error.

The first argument is that there exists no local ordinance or regulation requiring appellee to have or to pay for a sewage flow meter.

Evidence was presented that most properties within the city with connections to the public sewer system also receive water service from the city water system. The sewer charges for such properties are based on water consumption. Aurora City Ordinances 932.02(a) states in part:

"In the event there is no readily available means of determining the amount of water consumed because the establishment does not purchase City water * * * the sewer rate shall be based upon an actual metered discharge flow * * *."

■ Appellant does not purchase city water. Thus, the sewage discharged into the public system must be measured by a sewage flow meter pursuant to subsection 932.02(a).

Subsection 932.02(a) does not specify the entity responsible for the cost and installation of the sewage flow meter. Aurora City Ordinances 921.04(g) specifies, however, that "[a]ll costs and expenses incident to the installation and connection of the building sewer shall be borne by the owner."

The definitions of "sewer" and "building sewer" indicate that, under Aurora City Ordinances 921.04(g), appellant is responsible for the cost of its entire sewer system, up to the point where it connects with the public system.

The referee correctly reasoned that "since the Sea Lakes sewer must be metered, and since a flow meter would only be effective on the discharge side of a pump before the discharge point—that is, installed within the Sea Lakes building sewer—Sea Lakes is required to buy * * * the meter * * *."

Aurora City Ordinances 921.04(g) states only that an owner is responsible for the costs and expenses incident to installation and connection; it does not require that the owner install and connect the meter itself, but that it reimburse appellee for this expense. The section does not impose upon the owner the responsibility for maintenance. Thus, the portion of the trial court's judgment requiring appellant to pay for the maintenance of the meter is reversed.

■ Appellant's second argument presented in its fourth assignment of error is that appellee, through its Service Director, has selectively enforced the sewer and water meter requirements and thus violated appellant's constitutional right to equal protection of the law.

"[N]ot every divergence in the application of the law gives rise to an equal protection claim. *Brandon [v. Dist. of Columbia Bd. of Parole* (C.A.D.C.1987),

823 F.2d 644] at 650. 'The unlawful administration by [government] officers of a [law] fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' *Snowden v. Hughes* (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497, 503. The good faith of government officials and the validity of their actions is presumed; the burden of proof to show intentional and purposeful discrimination is upon the complaining party. *Id; Sunday Lake Iron Co. v. Wakefield Twp.* (1917), 247 U.S. 350, 353, 38 S.Ct. 495, 495–496, 62 L.Ed. 1154, 1156." *Cahill v. Lewisburg* (1992), 79 Ohio App.3d 109, 116, 606 N.E.2d 1043, 1048.

■ In the present case, appellant elicited testimony from the City Service Director that, of the few residential home owners who do not use city water, approximately half have elected, under Aurora City Ordinances 932.02(c), to purchase water meters which are attached to each owner's well.[2] The owner is then charged a sewage percentage rate based on water consumption in similar fashion to owners who use city water.[3] The City Service Director further testified that there are some (undetermined) number of homes not using city water which have neither a water meter nor a sewage meter. The Director testified that all commercial and industrial properties within the city have either sewage flow or water meters.

Appellant has not met its burden to show intentional and purposeful discrimination merely from testimony that a small percentage of residential properties did not, at the time of the hearing, have metered water use or discharge flow.

Appellant's fourth assignment of error has merit in part.

Appellant's fifth assignment of error restates arguments presented in the fourth assignment of error. Pursuant to the foregoing analysis, the fifth assignment of error has merit in part.

Accordingly, the judgment of the trial court is hereby affirmed in part and reversed in part.

*Judgment affirmed in part*
*and reversed in part.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.

---

**2.** Aurora City Ordinances 932.02(c) provides:

"Nothwithstanding subsection 9(a) hereof, any customer may at his option and cost have installed a separate water meter to measure water consumed but not discharged into the sanitary sewage system. Such water so metered will not be considered in calculating the sewer charge."

**3.** Appellant has not elected this option, perhaps due to the fact that appellant utilizes several wells which would involve the use of several meters.