DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Portsmouth Municipal Court, upon a jury verdict, finding Shawn Gee, defendant below and appellant herein, guilty of domestic violence in violation of R.C. 2919.25. The following error is assigned for our review:
 "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER THE EQUAL PROTECTION CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTION[S]."
A brief summary of the facts pertinent to this appeal is as follows. Appellant and Sandra Maynard were previously married and have two (2) children together. They were divorced in 1994 at which time Ms. Maynard was awarded custody and appellant was granted visitation. The children were visiting their father on the evening of November 25, 1998 when Ms. Maynard arrived at approximately 9:00 PM. Subsequently, appellant refused to let the children go with his ex-wife and an altercation ensued. Ms. Maynard left the premises but returned the following morning whereupon another fight took place over who would take the children. This time, the New Boston Police Department arrived at the scene and appellant was ultimately arrested.
On November 27, 1998, a criminal complaint was filed charging appellant with domestic violence in violation of R.C. 2919.25(A).[1] He pled not guilty and the matter proceeded to a jury trial.
At the trial, each side gave very different accounts of the events in question. Ms. Maynard testified that appellant's normal visitation days were Tuesdays and Thursdays. However, because Thursday of that week fell on Thanksgiving, and because the visitation schedule gave her that holiday with the children in even numbered years, she arranged for them to see their father instead on Wednesday, November 25th. She further testified that when she appeared at appellant's residence to pick up the children that evening, appellant stated that he intended to keep the children through the holiday weekend. This allegedly led to a shouting match between Ms. Maynard and her ex-husband which, by her account, ended with him slapping her in the head, throwing a pair of tennis shoes at her, and then finally shoving her "down real hard." Ms. Maynard recounted that she left the premises but returned the following morning and was subjected to more abuse. This time, the witness continued, her ex-husband hit her on the side of the head so hard that it "busted [her] eardrum" requiring medical attention.
Ms. Maynard's version of events over those two (2) days was at least partially corroborated by testimony of Larry Liles. Liles resides across the street from appellant. Liles related that, on the evening of November 25th, he heard a commotion outside his house, went to look out the window and observed appellant hit a lady "on the side of the head, flat handed." He also saw some "shoes thrown out the door" and heard children exclaiming "No Daddy! No Daddy!" Liles further recounted that on the following day, he heard another commotion outside, went to see what was happening and saw the same lady "laying on the street" and "moaning." The witness stated that he called the New Boston Police Department at that point.
Appellant and his current wife gave an entirely different account of the events. Appellant stated that he had worked out a deal with Ms. Maynard's mother whereby he gave up visitation on an earlier day in exchange for having the children stay with him through the long Thanksgiving weekend. Thus, appellant concluded, he was entitled to keep the children on the evening of November 25th and his ex-wife had no right to take them back. He therefore refused to surrender physical custody of the children when Ms. Maynard appeared at his home that evening. Appellant testified that, when his ex-wife learned that she could not get the children, his ex-wife became enraged and began pounding on the door of his house, shouting at him, calling him names and generally frightening the children. At one point, appellant continued, he opened the door to confront her and Ms. Maynard supposedly tried to force her way into the house. Appellant stated that at this point, he forcibly ejected her from his home. He denied pushing her down, however, and even testified that it was his ex-wife who threw the tennis shoes at him rather than the other way around.
The next day, appellant continued, his ex-wife returned and began pounding on the door and again demanded that she be given the children. Appellant opened the door and told her she had to leave the premises. Ms. Maynard allegedly responded by spitting in appellant's face. Appellant admitted that, at this point, he slapped her in the face.
Ruth Gee (appellant's wife) testified that on Thanksgiving morning, Ms. Maynard called on the phone "demanding" that she be allowed to take the children. Ms. Gee further testified that her husband's ex-wife showed up at their home a short time later and began "banging on the door screaming and yelling" and calling her ex-husband "a son of a bitch and a prick and a few other choice words."[2] The witness related that she went back in the house to attend to the children and, thus, did not see what happened next. When she came back, to the door, however, she saw Ms. Maynard lying in the street and yelling for help.
The jury returned a verdict and found appellant guilty of domestic violence as charged in the complaint. The trial court entered a judgment of conviction and sentence on June 18, 1999. Appellant received one hundred eighty (180) days in the Scioto County jail (with one hundred (100) of those days suspended) and three (3) years probation. The court further ordered appellant to complete the "Domestic Violence Counseling Program offered by Shawnee Mental Health." This appeal followed.
The gist of appellant's assignment of error is that he was somehow denied his rights to equal protection under the law. We note at the outset that appellant does not cite any portion of the record which shows that he raised these issues during the proceedings below and we have found nothing to that effect in our own review. The law is well settled law that a failure to raise constitutional issues at the trial level results in a waiver of those issues on appeal. See, generally, State v.Zuern (1987), 32 Ohio St.3d 56, 63, 512 N.E.2d 585, 592; State v. Awan
(1986), 22 Ohio St.3d 120, 489 N.E.2d 277, at paragraph one of the syllabus. It thus appears to us that the arguments raised by appellant in his brief have been waived and cannot be considered at this point.
Even if the arguments had not been waived, however, we are still not persuaded that his arguments have any merit. Appellant's first contention is that this matter was handled in an "illogical and arbitrary" basis because he was prosecuted for domestic violence and no such charge was ever brought against his ex-wife. We disagree. There was no physical indication that abuse was ever perpetrated against appellant (e.g. redness or bruising on the face as there was with his ex-wife) and even Ms. Gee gave no testimony that her husband was ever assaulted or injured. Ms. Maynard never admitted any violent acts against her ex-husband (as he did against her) and Mr. Liles testified that he never observed the alleged victim take any sort of aggressive action against appellant. In short, the only evidence of domestic violence perpetrated by Ms. Maynard is the testimony of her ex-husband. We note that the jury rejected appellant's assertion that Ms. Maynard was the aggressor in this incident and we suspect that the law enforcement authorities did as well. Thus, we are not persuaded that there was anything particularly arbitrary or illogical in the fact that appellant was arrested and charged with domestic violence and no such charge was brought against his ex-wife.
We further note that the prosecution is vested with the authority to investigate all facts relating to alleged criminal acts and behavior and is further vested with the discretion, in the interests of justice, to decide what, if any, criminal charges should be pursued. Generally, prosecutorial discretion is accorded very wide latitude unless, however, the prosecutorial decision making process is motivated by inappropriate and improper considerations. See, e.g. our "selective prosecution" discussion, infra.
We also reject any contention on appellant's part that his equal protection rights were violated.[3] Federal and state equal protection guarantees assure that states will not treat people differently under its laws on an arbitrary basis. See State v. Williams (2000),88 Ohio St.3d 513, 530, 728 N.E.2d 342, 359. Even a cursory review of R.C. 2919.25 reveals that there is no distinction between men and women insofar as the prohibition against domestic violence. We therefore assume that appellant is challenging the statute's constitutionality as it was applied. This requires, however, that appellant also demonstrate intentional and purposeful discrimination, see Snowden v. Hughes (1944),321 U.S. 1, 8, 88 L.Ed. 497, 503, 64 S.Ct. 397, 401; also see Aurora v.Sea Lakes, Inc. (1995), 105 Ohio App.3d 60, 68, 663 N.E.2d 690, 694;Cahill v. Lewisburg (1992), 79 Ohio App.3d 109, 116, 606 N.E.2d 1043,1048, and none has been shown here. We can also assure appellant that, while perhaps not as common as it is with men, women are indeed prosecuted on domestic violence charges under Ohio law. See e.g. In reAngela G. (Feb. 4, 2000), Lucas App. No. L-99-1200, unreported (female juvenile); State v. Toles (Dec. 8, 1999), Gallia App. No. 99CA9, unreported; State v. Coleman (Aug. 13, 1999), Montgomery App. No. 17229, unreported; In re Commons (May 18, 1999), Allen App. No. CA98 11 0076, unreported (female juvenile); State v. White-Barnes (May 9, 1997), Ross App. No. 96CA2190, unreported. His argument that he was denied equal protection under the law clearly has no merit. Appellant should recognize that criminal charges are based upon the factual circumstances presented to law enforcement authorities; charges are not based upon the desire and whim of every person involved in alleged criminal activity.
To the extent appellant is arguing that he is the victim of selective prosecution, we also find no merit in that claim. The Ohio Supreme Court has adopted the following test by which to evaluate a selective prosecution claim:
 "a defendant bears the heavy burden of establishing, at least prima facie, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two elements are sometimes referred to as `intentional or purposeful discrimination.'"
State v. Lawson (1992), 64 Ohio St.3d 336, 346, 595 N.E.2d 902, 910;State v. Flynt (1980), 63 Ohio St.2d 132, 134, 407 N.E.2d 15, 17; alsosee United States v. Berrios (C.A.2 1974), 501 F.2d 1207, 1211. Again, appellant can show no discrimination on the part of authorities. The law affords a presumption that criminal prosecutions are made in good faith.See State v. Spencer (Nov. 4, 1998), Scioto App. No. 97CA2536, unreported; State v. Perotti (May 15, 1991), Scioto App. No. 89CA1845, unreported. Appellant points to nothing in the record which rebuts that presumption and we have found nothing in our own review. It is also worth repeating that the parties were treated differently in this case (i.e. appellant was charged with domestic violence whereas his wife was not) because the facts and circumstances tend to show that they acted differently from one another. We therefore reject appellant's claim that he was the victim of selective prosecution.
Appellant's final argument goes to the statutory elements of domestic violence. The provisions of R.C. 2919.25(A) state that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant argues that in view of the fact that he and his ex-wife divorced in 1994, she is no longer a "family or household member." We disagree. A family or household member is defined, interalia, as a "former spouse" who "is residing or has resided with the offender." Id. at (E)(1)(a)(i). The evidence below shows that appellant and Ms. Maynard were once married. They presumably resided together during that marriage. Indeed, appellant concedes as much in his brief. Under the statute, it makes no difference that they had been divorced and not living together for four years at the time of this incident. The statute places no such temporal restrictions on the parties' sharing of a residence. Appellant and Ms. Maynard are also the parents of children which further classifies them as household members. Id. at (E)(1)(b). Thus, the statute clearly applies in this case.
For all these reasons, the assignment of error is without merit and is overruled. The judgment of the trial court is hereby affirmed.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Portsmouth Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion
 ___________________________ Peter B. Abele, Judge
[1] This particular charge related to the fight which occurred on the morning of November 26, 1998 (Thanksgiving Day). A second complaint was filed with respect to the fight which took place on the previous evening. Appellant was eventually acquitted on that second charge (after the jury deadlocked). Consequently, we do not address issues relating to the second complaint.
[2] Appellant and Ms. Gee were not yet married at the time of this incident but we refer to this residence as "their home" for the sake of simplicity.
[3] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. Section2, Article 1 of the Ohio Constitution places the same limit on state government as the Equal Protection Clause of the Fourteenth Amendment.See Wagner v. Armbruster (1996), 108 Ohio App.3d 719, 728, 671 N.E.2d 630,635; Cuyahoga Cty. Support Enforcement Agency v. Lozada (1995),102 Ohio App.3d 442, 452, 657 N.E.2d 372, 379.