OPINION
{¶ 1} Appellant, Alaina M. Lawrence, appeals from the April 30, 2004 and August 20, 2004 judgment entries of the Lake County Court of Common Pleas, Domestic Relations Division, in which the trial court terminated the shared parenting plan of appellant and appellee, Joseph A. Lawrence, designated appellee as the residential parent of their two minor children, granted in part appellee's motion to impose sentence on appellant, and ordered appellant to pay appellee child support.
 {¶ 2} On July 30, 1992, appellant filed a complaint for legal separation against appellee, alleging that the parties were married on May 23, 1987, that two children were born as issue of the marriage, Dominic Lawrence, d.o.b. November 7, 1989, and Vincent Lawrence, d.o.b. March 26, 1992, that appellee was guilty of gross neglect of duty and extreme cruelty, and that the parties were incompatible. Also on July 30, 1992, appellant filed a motion for temporary custody and/or residential placement, which was granted by the trial court on July 31, 1992. Appellee filed a complaint for divorce against appellant on August 17, 1992. On August 21, 1992, the trial court consolidated both cases and determined that appellee's complaint should be considered as a counterclaim to appellant's complaint.
 {¶ 3} On October 12, 1994, the parties filed a request and plan for shared parenting, in which the minor children were to reside with appellant and appellee was to have visitation. In December 1994, the trial court granted the parties a divorce, and approved their shared parenting plan.
 {¶ 4} Appellant and appellee filed a modification of their original shared parenting plan, which was granted by the trial court on October 28, 1997.[1] On May 7, 2002, appellee filed a motion for reallocation of parental rights and responsibilities, and a motion for an in-camera interview with the minor children. On April 16, 2003, appellee filed a motion to show cause, alleging that appellant denied him visitation with the minor children and should be held in contempt for disobeying the trial court's October 28, 1997 judgment entry.[2] A hearing on appellee's motion for reallocation commenced on June 9, 2003. On July 11, 2003, the trial court denied appellee's motion for reallocation of the minor children.
 {¶ 5} On October 29, 2003, the trial court denied appellee's June 23, 2003 and July 14, 2003 motions to show cause, but granted appellee's August 29, 2003 motion and ordered appellant to serve five days in jail. On December 1, 2003, appellee filed a motion to impose sentence upon appellant and a motion for immediate possession of the minor children. On March 2, 2004, appellee filed a second motion for an in-camera interview with the minor children.
 {¶ 6} On March 5, 2004, a hearing commenced regarding appellee's motion for a reallocation of parental rights, motion to show cause, and to impose sentence.[3] At that hearing, appellant testified that she did not comply with a court order to pay a fine imposed upon her. Appellant indicated that she was aware that she could go to jail for five days if she failed to install a web-cam by November 21, 2003, so that the minor children could communicate with appellee. Appellant did not have the web-cam installed for operation by November 21, 2003. Although the web-cam was not operational, appellant insisted that the minor children send e-mail messages and handwritten letters to appellee that they lied to him about the web-cam not working. Appellant stated that when appellee came to Ohio from Florida to visit the minor children, she told him that the minor children were going to be with her and that they had plans. Appellant sent correspondences to appellee with respect to the fact that he should never call or contact her, and included references to appellee's "jerk off" lawyer and "stupid" wife.
 {¶ 7} According to appellee, appellant failed to pay a fine or install the web-cam by November 21, 2003, pursuant to the court's purge order. Appellee stated that although telephone conversations with the minor children were not to be monitored, appellant would quite often be on the line while appellee talked with his children. Appellee stressed that because of appellant, he has not been able to communicate effectively with the minor children, which has negatively impacted their relationship. Appellee testified that he wrote appellant that he was coming to Ohio to visit, and when he arrived in Ohio, she did not let him visit with the minor children. Appellee opined that if the minor children remain with appellant, she will continue to verbally and physically abuse them. Appellee said that after the pretrial in January 2004, Dominic told him that appellant slapped Vincent after she asked him if she ever said that he and Dominic could not use the web-cam and he responded, "yes." Appellee stated that there is a constant battle with appellant regarding appellee visiting as well as being able to take the minor children on vacation. Appellee maintained that he would like to be the residential parent of the minor children. Appellee said that Dominic indicated that appellant does not allow him and Vincent to use the web-cam.
 {¶ 8} Appellee's wife, Michelle Lawrence, testified that she supports appellee with regard to his motion for change of custody of the minor children. Michelle Lawrence indicated that her daughter, Alex, who was four years old on the date of the hearing, has a very close relationship with the minor children. Michelle Lawrence said that because of appellant, appellee is not able to have a normal relationship with the minor children. Michelle Lawrence stated that if appellee were granted custody, she would facilitate visitation and contact between the minor children and appellant.
 {¶ 9} After the hearing, in-camera interviews were conducted on the record between the minor children and the judge. The interviews were not transcribed and are not part of our record.
 {¶ 10} Pursuant to its April 30, 2004 judgment entry, the trial court granted in part appellee's motion to impose sentence and ordered appellant to serve two of the five days in jail. The trial court dismissed appellee's December 1, 2003 motion to show cause. Additionally, the trial court determined that it was in the best interest of the minor children that the parties' shared parenting plan be terminated, and designated appellee as the sole residential parent of the minor children.[4] It is from that judgment that appellant filed a timely notice of appeal, Case No. 2004-L-089.
 {¶ 11} On July 30, 2004, a hearing was held before a magistrate for the purpose of establishing a child support order for appellant. Pursuant to her July 30, 2004 decision, the magistrate determined that appellant shall pay appellee $316.79 per month per child in child support. Appellant did not file an objection to the magistrate's decision.
 {¶ 12} Pursuant to its August 20, 2004 judgment entry, the trial court adopted the magistrate's decision and ordered appellant to pay appellee $316.79 per month per child in child support. It is from that judgment that appellant filed a timely notice appeal, Case No. 2004-L-142. On January 10, 2005, this court consolidated both appeals. Appellant makes the following assignment of error:
 {¶ 13} "The trial court erred as a matter of law when it modified custody as a sanction for contempt."
 {¶ 14} In her sole assignment of error, appellant argues that the trial court erred by modifying custody as a sanction for contempt. Appellant contends that the trial court abused its discretion when it terminated the shared parenting plan and granted appellee sole residential custody of the minor children.
 {¶ 15} Preliminarily, we must note that appellant failed to file objections to the July 30, 2004 magistrate's decision.
 {¶ 16} Civ.R. 53(E)(3)(d) provides in pertinent part that: "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 17} In the instant matter, the trial court indicated in its August 20, 2004 judgment entry that upon consideration of the magistrate's decision, the court adopts said decision as the court's own. It is undisputed that appellant filed no objections to the magistrate's decision.[5]
 {¶ 18} We stated in Kistler v. Kistler, 11th Dist. No. 2003-T-0060, 2004-Ohio-2309, at ¶ 22, that: "[i]f a party fails to file objections to a magistrate's decision in accordance with Civ.R. 53, such claim or objection is waived for purposes of appeal, and an appellant may not then challenge the court's adoption of the magistrate's factual findings on appeal. Aurora v. Sea Lakes, Inc. (1995), 105 Ohio App.3d 60, 66 * * *." (Parallel citation omitted.) Here, pursuant to Civ.R. 53(E)(3)(d), appellant waived her right to appeal the trial court's adoption of those findings of fact and conclusions of law relating to the August 20, 2004 judgment entry. See Group One Realty, Inc. v. Dixie Internatl., Co.
(1998), 125 Ohio App.3d 767, 768-769. Therefore, appellant's failure to file objections to the magistrate's decision precludes this court from addressing any alleged error stemming from the trial court's August 20, 2004 judgment entry which ordered appellant to pay child support.
 {¶ 19} In any event, although appellant filed timely notices of appeal pertaining to the April 30, 2004 and August 20, 2004 judgment entries, her brief does not address the merits of the child support issue from the August 20, 2004 judgment entry, but rather only focuses on change of custody issues from the April 30, 2004 judgment entry. Thus, because appellant's sole assignment of error relates to the April 30, 2004 judgment entry, we will provide a merit analysis.
 {¶ 20} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights and responsibilities for the care of children and states that:
 {¶ 21} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 22} "* * *
 {¶ 23} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 24} If a trial court determines that a change of circumstances has occurred, it must then consider the statutory factors governing best interest, pursuant to R.C. 3109.04(F)(1), which provides that:
 {¶ 25} "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 26} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 27} "(b) * * * [T]he wishes and concerns of the child * * *;
 {¶ 28} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 29} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 30} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 31} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 32} "* * *
 {¶ 33} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 34} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 35} The Supreme Court of Ohio held that a decision to modify custody pursuant to R.C. 3109.04(F) will not be disturbed on appeal absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, paragraph one of the syllabus. This standard of review is applied because it is imperative that trial courts are given wide latitude in these cases. Id. at paragraph two of the syllabus. Thus, we will not reverse the decision of the trial court unless the court acted in a manner that was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 36} We must note that custody of children may not be changed merely as a sanction for contempt. Culberson v. Culberson (1978),60 Ohio App.2d 304, 306. The record here, however, supports the trial court's determinations for a change of circumstances, which go beyond the issue of contempt. Appellant's deep anger and/or hatred toward appellee and his family, her interference with communication and visitation between the minor children and appellee, and the fact that she encouraged the minor children to lie to appellee are sufficient to support a change of circumstances.
 {¶ 37} The trial court's April 30, 2004 judgment entry listed all of the relevant factors that must be considered under R.C. 3109.04(F)(1). Specifically, the trial court listed the following factors applicable to this case:
 {¶ 38} "(a) Each parent wishes to be the children's residential parent herein.
 {¶ 39} "(b) The children have been interviewed in camera by this Judge. [Appellant's] household has a much higher tension level than [appellee's]. Both boys want to remain together no matter where they live.
 {¶ 40} "(c) The boys enjoy being with their half sister, Alex and stepmother, Michelle in Florida. Their stepmother also has family members residing in Florida. In Ohio, the boys reside with [appellant] and stepfather. They have a large extended family here.
 {¶ 41} "(d) The boys appear adjusted at [appellant's] residence, school, and community. Testimony from [appellee] and stepmother shows the boys settle in very quickly when in Florida.
 {¶ 42} "(e) Physically the parents, children, and significant others are in good health, there being no testimony to the contrary. However, [appellant's] demeanor and testimony during trial demonstrate she has deep anger, if not hatred, towards [appellee] and his family. The E-Mail exhibits admitted during trial illustrate the intensity of [appellant's] anger. It appears to this Court [appellant] has deep unresolved emotional issues as to the divorce which directly impact her inability to deal with [appellee]. This has resulted in the deterioration of any type of meaningful E-Mail or telephone communication between [appellee] and the boys at [appellant's] house. It has also resulted in [appellee] being demeaned, belittled, and criticized in front of the boys by [appellant] and her family.
 {¶ 43} "(f) By clear and convincing evidence, [appellee] is more likely to honor and facilitate Court approved parenting time rights * * *. [Appellant] has interfered with communication/visitation between the boys and [appellee] in all manner and modes of communication. When the boys have been in Florida, [appellee] has not interfered with their ability to contact [appellant] whether by E-Mail or telephone whenever they wish.
 {¶ 44} "* * *
 {¶ 45} "(i) The testimony herein shows that [appellant] goes by the letter of the orders herein and not the spirit. [Appellee] has had to be in Ohio for the prosecution of various motions herein; [appellant] did not permit him to see the children upon his request since this travel is not part of the Court's prior order. * * * [Appellant's] denials necessitate the Court issuing interim orders during the trial so that [appellee] could visit [and] see his two sons while in town.
 {¶ 46} "(j) [Appellee] has lived in Florida since 1996. The boys are very accustomed to traveling between Ohio and Florida.
 {¶ 47} "The Court concludes [s]hared parenting between the parties is not possible.
 {¶ 48} "The Court finds there has been a change in circumstances since July 11, 2003 pursuant to [R.C.] 3109.04(E)(1)(a). The best interests of the children require that the Shared Parenting Plan be terminated. [Appellant] is now violating Court orders upholding the boys [sic] ability to communicate with [appellee]. Further, [appellant's] anger has now escalated to her hitting her younger son."
 {¶ 49} Here, the trial court did not abuse its discretion by designating appellee as the residential parent of the minor children. The trial court precisely stated in its judgment entry that there has been a change of circumstances since July 11, 2003 pursuant to R.C.3109.04(E)(1)(a). Reading the trial court's judgment entry in its entirety, it is apparent that the court considered that the harm likely to be caused by a change of environment is outweighed by the advantages of the change to the minor children. R.C. 3109.04(E)(1)(a)(iii).
 {¶ 50} In addition to determining that a change of circumstances has occurred, the trial court considered and comprehensively detailed the applicable R.C. 3109.04(F)(1) statutory factors governing best interest. Thus, the trial court's decision was based on findings which demonstrated that the best interest of the minor children would be served by the change of custody and that the harm of the change of environment was outweighed by the benefits.
 {¶ 51} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.
Grendell, J., Rice, J., concur.
[1] After the parties were granted a divorce, appellee moved from Ohio to Florida, and the minor children remained in Ohio with appellant. As a consequence of the relocation, the parties entered into a modification of the original shared parenting plan on October 15, 1997, with respect to visitation.
[2] Appellee filed four additional motions to show cause on June 23, 2003, July 14, 2003, August 29, 2003, and on December 1, 2003.
[3] Prior to this hearing, the minor children met with Dr. Weinstein, who indicated that appellant has an intense display of anger and/or conduct towards appellee, and recommended that appellee should be the residential parent of the minor children.
[4] Appellee moved the minor children from Ohio to Florida.
[5] The July 30, 2004 magistrate's decision set out the fourteen-day objection rule and cited Civ.R. 53(E).