OPINION
This is an appeal from the Portage County Court of Common Pleas, Domestic Relations Division. Appellant, Stephen R. Simms, appeals from the trial court's overruling of his motion for modification of visitation.
Appellant and appellee, Becky Simms, n.k.a. Becky Reese, were married on January 20, 1990. Appellee filed a complaint for divorce on July 29, 1991, charging appellant with gross neglect of duty and extreme cruelty. On the same date, appellee filed a motion for a temporary restraining order, and a motion for custody of the parties' daughter, Samantha M. Simms ("Samantha"), born July 22, 1990, in addition to a request for child support. A custody affidavit was also filed, in which appellee averred that: (1) the parties separated in April 1990; (2) since the separation, Samantha had resided with appellee, and appellant had only visited Samantha occasionally, with no extended or overnight visitations by appellant's own choice; (3) appellant was a convicted felon and had served time in a correctional facility; (4) appellant owned numerous guns and was a manufacturer and user of illegal drugs; (5) on July 27, 1991, appellant had, without appellee's knowledge or permission, removed the parties' daughter from the house of the babysitter, and had refused to disclose the whereabouts of the child; (6) appellant had broken into appellee's home and stolen various items; and (7) appellee feared for the safety of herself and her child. On July 29, 1991, the trial court granted appellee custody of Samantha, and ordered all law enforcement agencies to deliver Samantha to appellee.
Appellant filed an answer and counterclaim for divorce on July 31, 1991. On the same date, appellee filed a motion to vacate theex parte order of custody, in which he averred that appellee's affidavit was "fraught with falsehoods." Appellant further averred that appellee had denied him regular visitation, and that he had not been able to visit his child for about three weeks. He admitted that he did take Samantha from his brother's house, who was babysitting, so that he could spend time with her. Appellant conceded that he had a criminal conviction, but denied appellee's other charges, stating that he had "totally rehabilitated himself from his earlier problems." Although the date is not contained in the record, at some point subsequent to the date of appellant's motion, the court granted limited, supervised visitation to appellant. The trial court conducted a hearing on the temporary orders on November 5, 1991.
Appellee filed a motion to restrict visitation on December 12, 1991, alleging that on December 6, 1991, appellant had assaulted appellee at her residence, which incident had resulted in the filing of a criminal charge of domestic violence in Portage County Municipal Court,[1] and that appellant had told appellee that he intended to remove and hide Samantha at his next opportunity because appellee had resisted appellant's attempts to re-establish a relationship. The trial court suspended appellant's visitation privileges on the same date.
On January 9, 1992, the trial court dissolved the ex parte
order limiting appellant's visitation. In an affivadit filed on January 27, 1992, appellee averred that appellant had failed to return Samantha at the end of his weekend visitation. Appellee further claimed that upon checking with appellant's family and employer, she had been unable to locate appellant, and she had discovered that appellant had failed to appear for work on January 27, 1992. Appellee continued by stating that appellant had previously threatened to take the child away; consequently, appellee sought the court's assistance in locating Samantha and terminating appellant's visitation privileges. On January 27, 1992, the court found that appellant should appear and show cause why he should not be held in contempt, and further ordered that Samantha be returned to appellee.
The trial court granted appellee a divorce on March 24, 1992, designated appellee as the residential parent, and denied appellant his visitation privileges, stating that appellant was not entitled to visitation or contact with Samantha until further order of the court.
Appellant was indicted on April 6, 1992, on one count of child stealing, R.C. 2905.04, and entered a plea of guilty on May 4, 1992.[2] Appellant was released from jail on bond on May 11, 1992, regarding the child stealing charge. The trial court ordered appellant not to have any contact with appellee or members of her family.
Appellant filed a motion for visitation on May 21, 1992. A hearing was conducted on June 10, 1992, at which time the magistrate[3] determined that: (1) during the pendency of the divorce, appellant had stolen Samantha and secreted her for several months from appellee; (2) appellant had voluntarily surrendered himself and Samantha to the authorities; and (3) appellant had an unrelated theft offense pending in Summit County and would undoubtedly be sentenced to the state penitentiary in the near future.
The magistrate recommended that appellant be given supervised visitation at the Family of Jesus Fellowship Church in Ravenna, Ohio.
Appellee filed objections to the magistrate's report on June 25, 1992, contending that: the factual findings were based on insufficient evidence; appellant was a threat to leave the jurisdiction based on his pending charge of domestic violence, and other pending charges of felony theft; appellant had continued to engage in a course of harassing and threatening conduct, including burglarizing appellee's residence; and the appointed supervisor of the visitation possessed no knowledge of appellant's history and had no ability to control his conduct.
Appellant was convicted of felony theft charges on July 23, 1992, for having embezzled over $50,000 from his employer between 1990 and 1992, and was sentenced to two and one-half to ten years in prison.
On August 10, 1992, the trial court found appellee's objections to be moot and overruled the objections. Appellant was sentenced by the Portage County Court of Common Pleas to six months in prison for his conviction for one count of child stealing, R.C.2905.04, the sentence to be served concurrently with the sentence for embezzlement.
On September 3, 1993, appellant filed a pro se motion to modify visitation, requesting one visit per month with his daughter while he was in prison. Appellant further filed a motion for the appointment of a guardian ad litem on September 7, 1993, and also filed a motion for psychological evaluation of Samantha, on October 27, 1993. The court appointed the guardian ad litem on December 27, 1993. Appellant filed a second motion for modification of visitation rights on April 5, 1994, requesting that appellant's parents' names be added to the visitation list. The court overruled this motion on April 11, 1994, for lack of jurisdiction, stating that neither of appellant's parents was a party to, or had been joined in the action.
The matter came on for hearing before the trial court on June 6, 1994. On June 13, 1994, the trial court filed its judgment entry. In the entry, the court stated that the guardian ad litem
had testified that pursuant to interviews with Samantha, and a review of the facts and circumstances of the case by the trial court, "that visitation of the child while the father was still in prison was not in the best interests of the child." The trial court agreed with the guardian ad litem's determination, and therefore overruled appellant's motion for modification of visitation.
On January 13, 1997, appellant filed a "Petition for Visiting Rights and Other Non-Custodial Parent [sic] Rights[.]" On the same day, the magistrate determined that the most recent motion was the same general motion as the ones previously submitted by appellant in September 1993 and April 1994; that the guardian had determined, and the trial court had agreed, that visitation was not in the child's best interest; and that appellant was still in prison and, consequently, there had been no change in circumstances to warrant a modification in visitation. The trial court adopted the magistrate's findings and recommendation, and overruled appellant's "petition" on the same date.
Appellant filed a timely notice of appeal and raises the following assignments of error:
 "[1.] The magistrate judge [sic] failed to provide the appellant with access to the courts guaranteed by the First Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution by not reading the appellants [sic] brief, which is different from the previously filed brief that was filed by the appellant.
 "[2.] The appellee's attorney, Victor V. Vigluicci, improperly used his office as Prosecuting Attorney for Portage County to assist the appellee."
In the first assignment, appellant argues that he was denied his constitutional rights as a result of the trial court's alleged failure to read his brief filed on January 13, 1997, and asserts that visitation with Samantha is in the best interest of the child. Upon review, we reject appellant's contentions.
Conversely, appellee claims that appellant lists nine allegations that are wholly unrelated to, and not in support of his argument that the magistrate and/or trial judge violated hisFirst Amendment rights and denied him access to the courts by not reading his "petition." Appellee also asserts that appellant has offered no evidence or case law to support his position. Appellee further contends that appellant does not attempt to explain how his First Amendment rights are related to, or compromised by the trial court's alleged failure to read his "petition." A review of the record demonstrates that appellant has indeed failed to properly argue and substantiate his constitutional claims with record references and case authority, in derogation of App.R. 12(A)(2) and 16(A)(7).
"A presumption of validity attends the trial court's action."Volodkevich v. Volodkevich (1989), 48 Ohio App.3d 313, 314. In our opinion, there is nothing in the record before this court to indicate that the magistrate did not fully consider the arguments and law set forth in appellant's January 13, 1997 "petition." In fact, the magistrate's decision states that he made his findings and recommendations "[a]fter a review of the pleadings and the previous filings[.]" The trial court's judgment entry states that the trial court "considered the motion of the defendant and the findings and recommendations of the magistrate[.]" Thus, there is no indication that the magistrate or the trial court failed to consider appellant's claims in their totality.
Civ.R. 53(E)(3)-(4) provides, in relevant part:
"(3) Objections.
 "(a) Time for filing. Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision. * * *
 "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection. * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
"(4) Court's action on magistrate's decision.
 "(a) When effective. The magistrate's decision shall be effective when adopted by the court. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision.
"* * *
 "(c) Permanent and interim orders. The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. * * *"
In this case, the trial court adopted the magistrate's findings and recommendation on the same day that the magistrate's decision was filed, January 13, 1997. Appellant never filed objections to the magistrate's decision. Further, appellant did not submit a transcript to the trial court, or to this reviewing court. Appellant avers that his indigent status precluded him from obtaining a transcript.
This court held in Hurst v. Liberty-Bel, Inc. (Dec. 31, 1996), Trumbull App. No. 95-T-5380, unreported, at 13-14:
 "[W]hile Civ.R. 53(E)(3)(a), formerly Civ.R. 53(E)(2) grants a party fourteen days from the filing of a referee's decision to file written objections, Civ.R. 53(E)(4)(c), formerly Civ.R. 53(E)(7), specifically permits a trial court to adopt a referee's decision and enter judgment without waiting the fourteen-day period for the parties to file timely objections. If the court does enter judgment prior to the fourteen-day period, an aggrieved party may still file timely objections to the referee's decision. Appellants never filed any objections to the referee's report. The timely filing of any objections would, as the rule indicates, operate as an automatic stay of execution of the court's judgment until the court addresses the objections and renders a ruling thereon. * * *"
If an appellant does not object to the factual findings of the magistrate by filing objections to the magistrate's decision, then the appellant may not challenge the court's adoption of the magistrate's factual findings on appeal. Civ.R. 53(E)(3)(b). See, also, Aurora v. Sea Lakes, Inc. (1995), 105 Ohio App.3d 60,66.[4] Civ.R. 53(E)(3)(b) "also precludes the assigning as error [of] any conclusion of law absent an objection." Stafinskyv. Stafinsky (1996), 116 Ohio App.3d 781, 785, fn. 3. A party's failure to object to a matter contained in a magistrate's decision is considered a waiver of his or her right to argue the issue on appeal. Zumock v. Zumock (Sept. 26, 1997), Portage App. No. 96-P-0180, unreported, at 3. Thus, appellant's failure to object is alone dispositive of the arguments in his assignments of error. See Stafinsky at 785.
Moreover, we agree with appellee that if appellant is now arguing that the magistrate's findings of fact or judgment are unsupported by the evidence, or are contrary to the weight of the evidence, then appellant should have included in the record all evidence relevant to such a finding or judgment. "With respect to Civ.R. 53, this court has repeatedly held that a party cannot challenge on appeal the factual findings contained in a magistrate's report unless that party submits the required transcript or affidavit. City of Willowick v. Gibaldi (Feb. 21, 1997), Lake App. No. 96-L-079, unreported, at 3; Larson v. Larson
(Mar. 7, 1997), Portage App. No. 96-P-0217, unreported, at 5."Pawlowski v. Pawlowski (Aug. 22, 1997), Lake App. No. 96-L-144, unreported, at 3-4. If the complaining party does not submit the transcript or affidavit, then that party is precluded from arguing the factual determination on appeal and waives any claim that the trial court erred in adopting the magistrate's factual finding.Id. at 4.
Based on appellant's failure to satisfy the procedural requirements of Civ.R. 53, and our review of the magistrate's decision, we conclude that the trial court was justified in adopting the magistrate's decision and overruling appellant's "petition" for modification of visitations rights.
Ignoring the procedural deficiencies in this case and examining the merits of appellant's claims, we determine that appellant's essential argument also fails on a substantive level. It is undeniable that in appellant's prior motions he requested visitation only, but that in appellant's January 13, 1997 "petition" and memorandum in support, appellant not only requested visitation but also asked for other rights of a non-residential parent. However, the overriding factor, as recognized by the magistrate and the trial court, was the guardian ad litem's
position that visitation with the child by appellant was not in the child's best interest so long as appellant remains in prison. The magistrate determined, and the trial court agreed, that no change of circumstances necessitating a modification had occurred due to the fact that appellant was still incarcerated.
Appellant, on the other hand, basically asserts that the mere fact that one is incarcerated is not an automatic basis for denial of visitation. However, we determine that the magistrate's decision here is supported under the case law. "An appellate court will review a trial court's decision with respect to visitation with deference and will reverse only if the trial court abused its discretion. * * *" (Citations omitted.) Calhoun v.Calhoun (June 10, 1996), Fayette App. No. CA95-11-024, unreported, at 1, 1996 WL 307128. In Calhoun, the court further stated:
 "* * * A nonresidential parent's imprisonment for a term of years is an extraordinary circumstance which will support the denial of visitation. In re Hall (1989), 65 Ohio App.3d 88, 90. It is presumed to be not in a child's best interest to visit a parent who is incarcerated. Id. at 91; In re Erica (C.P. 1994), 65 Ohio Misc.2d 17, 19. Thus, the incarcerated nonresidential parent bears the burden of demonstrating that visitation between the child and parent at the place of incarceration is in the child's best interest. Hall at 91; Erica at 19."[5]
The Calhoun court considered three circumstances in its decision: 1) the age of the child, who was only four at the time the modification motion was filed; 2) the length of the appellant's incarceration; and 3) the fact that the appellant was still incarcerated. The Twelfth District Court of Appeals affirmed the trial court's decision, stating that it would not be in the child's best interest to visit the incarcerated nonresidential parent while that parent was in prison. Id. at 3.
In Conkel v. Conkel (1987), 31 Ohio App.3d 169, 172, the court stated that "[t]he denial of visitation should only be done when egregious conduct by the noncustodial parent results in harm to the child."
The determinative factors in this case are appellant's continuing incarceration, the age of the child, six and one-half years old, and appellant's prior conduct, i.e., abducting his daughter. Appellant claims that he cannot be denied visitation because he did not engage in any egregious conduct. In our view, appellant's abduction of Samantha constitutes egregious conduct. Furthermore, the guardian ad litem recommended that it was not in the best interest of Samantha to visit appellant while he remains in prison, which indicates that the guardian ad litem was of the opinion that such visitation would be harmful to Samantha.
Upon the record as it stands before this court, we conclude that the magistrate's factual findings and recommendation, that appellant not be granted visitation privileges while he is incarcerated, are supported by the evidence and case law. Therefore, the trial court's adoption of the magistrate's decision, and its denial of appellant's "petition" for modification of visitation, does not constitute an abuse of discretion. Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error is also not well-founded. Appellant failed to file a timely appeal from the trial court's denial of his prior motion for modification. Without judging the merits of this claim, we note that if appellant believed that a conflict of interest with respect to the prosecuting attorney adversely impacted the resolution of his visitation rights during the June 6, 1994 hearing, then he was obligated to raise the issue by filing a timely appeal within thirty days of the trial court's ruling on that motion on June 13, 1994. As noted by appellee, "[a]ppellant's assignment of error does not relate to any error committed by the court in making the [j]udgment appealed from," i.e., the January 13, 1997 judgment. Thus, by failing to file a timely appeal from the June 13, 1994 judgment entry, appellant has waived any error with respect to any issues arising from that hearing. App.R. 4(A).
Second, as stated previously, appellant has failed to provide this court with a transcript of the June 6, 1994 hearing, and the record does not contain the letter purportedly written by Prosecutor Victor Vigluicci, appellee's former attorney, to the parole board arguing that appellant's parole should be denied. Based on the procedural and record deficiencies, we are compelled to presume the regularity of the proceedings and affirm. Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. In conclusion, appellant's second assignment of error is not well-taken.
Accordingly, appellant's assignments of error are without merit. The judgment of the trial court is affirmed.
DONALD R. FORD, PRESIDING JUDGE.
NADER, J., and O'NEILL, J., concur.
[1] Appellant contends that he was found not guilty of the domestic violence charge.
[2] The facts pertaining to appellant's criminal charges, guilty pleas, and sentencing are not contained in the record before this court, but are contained in appellee's brief and, with a few exceptions, have not been challenged by appellant in his "answer" brief, which we treat as a reply brief.
[3] During the course of the instant proceedings in the trial court, Civ.R. 53 was amended, effective July 1, 1996, and changed the title of "referee" to "magistrate." We will refer to this judicial official as magistrate throughout the opinion.
[4] In Sea Lakes, Inc., we interpreted the language in former Civ.R. 53(E)(4).
[5] But, see, Tobens v. Brill (1993),89 Ohio App.3d 298, 302, where the court held that it was reversible error not to grant the nonresidential parent any visitation privileges whatsoever simply because he was incarcerated. In that case, there were no aggravating circumstances to be considered in conjunction with the incarceration itself, as is the case here.