DECISION
The present appeal is brought by four condominium associations: Hilliard Village, Hilliard Commons, McNeil Farms East and Blendon Park. Appellants appeal the judgment of the Franklin County Court of Common Pleas sustaining the summary judgment motion of appellees, the city of Columbus, Tom Merritt and Gerald Edwards, and overruling appellants' motion for partial summary judgment. Appellants present the following assignment of error for review:
 The trial court erred in entering summary judgment in favor of defendants-appellees, The City of Columbus, Thomas B. Merritt, and Gerald L. Edwards, and against relators-plaintiffs/appellants, Hilliard Commons Condominium Association, Blendon Park Condominium Association, Hilliard Village Condominium Association, and McNeil Farms East Condominium Association, on the Amended Complaint. Columbus City Code Section ("C.C.") 1303.06 provides that the Director of Public Service shall collect and dispose of all dead animals and refuse within the city, except as provided in C.C. 1303.08 (unsalable or condemned food products to be disposed of by person having possession). Columbus offers five types of refuse collection service: manual, mechanized sixty-gallon container service, mechanized ninety-gallon container service, mechanized three-hundred gallon container service, and mechanized dumpster service.
Appellants, the condominium associations, were built by the same builder, have essentially the same physical layout, and range in size from four hundred sixty-two units to six hundred sixty units. In November 1995, appellants, who were all currently receiving ninety-gallon container service from a private refuse collection company, individually filed and submitted applications to receive city refuse services. These applications remained on hold through 1996. In January 1997, Hilliard Village reapplied for services.
Although the employees of the refuse collection division who investigated Hilliard Village and Hilliard Commons found dumpster service infeasible and recommended ninety-gallon service, John Johnson, the Refuse Collection Operations Manager, did not approve this recommendation. Johnson wrote Hilliard Village in March 1997, informing it that it would need to provide dumpsters with pads and screening in order to receive refuse service.
Appellants viewed appellees' refusal to provide ninety-gallon service as effectively refusing to provide any service and filed suit. In their amended complaint, appellants sought relief in mandamus to compel the city to provide refuse collection services, and for money damages under R.C.2731.11. Alternatively, appellants sought declaratory and mandatory injunctive relief at common law and under Section 1983, Title 42, U.S.Code; they also sought money damages under Section 1983 for violation of federal constitutional rights. Thus, appellants sought a court order compelling appellees to provide ninety-gallon container service and to pay damages equal to the amount appellants have had to pay for private refuse services.
Appellants filed for partial summary judgment on the issue of liability and their claims for declaratory and injunctive relief which was overruled. Appellees' motion for summary judgment on all claims was sustained.
Appellate review of a trial court's decision on a motion for summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588. To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact remains to be litigated, that it is entitled to judgment as a matter of law, and that it appears from the evidence, when viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C);Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317.
Before a court may grant a writ of mandamus, the relator must establish a clear legal right to the relief prayed for, a clear legal duty on the respondent's part to provide the relief prayed for, and lack of an adequate remedy at law. State ex rel. Hodges v. Taft (1992), 64 Ohio St.3d 1, 3.
When appellants submitted their initial application for city refuse service, Cecil Stallings, a district manager with the city's refuse collection department, investigated Hilliard Village and Hilliard Commons for possible dumpster service. Based on the layout of the communities, Stallings determined that dumpster service was "impossible." At his deposition, he explained that dumpsters were infeasible because the complex was so tightly built that there was no room to maneuver. Consequently, he recommended ninety-gallon container service.
In February 1997, after Hilliard Village reapplied for refuse service, Albert Wofford, a refuse collection supervisor for the dumpster section of the division, surveyed Hilliard Village to determine the appropriate type of service. On the recommendation form that Wofford completed, he commented that, due to the setup of the community, it would be very costly to have dumpster collection and that they would lose a lot of parking; consequently, he recommended ninety-gallon container service. At his deposition, Wofford added that the complex would have to dig into its pool areas, parking spaces, dead ends, or garage areas to install the required pads, gates and bins necessary for dumpster service.
In support of their petition for mandamus, appellants argue that dumpster service is completely infeasible and that, in refusing to provide any type of service but dumpster service, the city, in effect, has refused to provide any service and has violated its duty under C.C. 1303.06 to provide refuse collection.
Appellees agree that C.C. 1303.06 imposes a duty on the city to provide refuse collection services to appellants; however, appellees argue that C.C. 1303.06 does not require the city to provide a certain type of refuse collection service on demand of the property owner. Because the city is willing to provide dumpster service, appellees contend that it has complied with its duty under C.C. 1303.06.
The trial court agreed with appellees' argument and found that the city had met its duty under C.C. 1303.06 by offering dumpster service to appellants.
Appellees' basis for denying appellants ninety-gallon container service was founded upon former C.C. 1303.11, which required "[a]ny newly constructed apartment dwellings of five units or more" to provide dumpsters in order to receive city refuse collection. The trial court determined that C.C. 1303.11 did not apply to condominium associations, and appellees have not appealed this portion of the decision.
Appellees take the position that, "presumably" at the time the condominium associations were constructed, they had requested individual service and declined the city's offer to provide dumpster service. Appellants then "presumably" proceeded to build their properties to allow only individual service and contracted with private refuse collection companies for this service. Appellees contend that design decisions are made at a developer's own risk and that, if a developer who chose a design amenable only to individual service subsequently requests city refuse services, it still must accept the city's offer to provide only dumpster service.
Appellees' position is not persuasive. Significantly, appellees did not provide any evidence to support their presumptions, while appellants filed affidavits that refute appellees' presumptions. Appellants submitted the affidavits of Craig Bohning, an employee of the engineering firm that submitted site plans for appellants to the city for approval, and David Cooper, an assistant construction manager who was responsible for obtaining the building permits for appellants from the city. Both men stated that the city did not require provision for dumpsters before approving the site plans and issuing building permits for Hilliard Commons, Hilliard Village, McNeil Farms East, or the first phase of Blendon Park, nor did the city advise Cooper that dumpsters were required for these communities. Not until early 1996, when approval was sought for the second and third phases of Blendon Park, did the city withhold approval until provision was made for dumpsters. Thus, the record does not support appellees' argument that appellants could have avoided their present predicament and should now suffer the consequences.
The determinative issue under appellants' request for a writ of mandamus is whether appellees have failed to honor their duty to collect refuse. Resolution of this issue necessitates determining whether equipping the communities for dumpster service would truly be so costly that it is infeasible and not an option, and, if so, whether the city's refusal to provide a feasible method of collection amounts to a refusal to fulfill its statutory duty. Evidence in the record regarding the logistics of equipping Hilliard Village and Hilliard Commons with dumpsters creates a genuine issue of material fact as to the feasibility of dumpster service at these two communities. Although the record contains no specific evidence regarding the feasibility of equipping McNeil Farms and Blendon Park with dumpsters, given the evidence that the physical layout of all four appellants is the same, for summary judgment purposes appellants have established a genuine issue of material fact as to each appellant. Therefore, a reasonable trier of fact could conclude that offering only dumpster service is tantamount to refusing service, and summary judgment as to appellants' claim for mandamus relief was inappropriate.
Appellants also argue that the trial court erred in entering judgment on their claims for declaratory and injunctive relief. In their amended complaint, appellants allege that they are entitled to a declaration that appellees' refusal to provide refuse collection service violates appellants' rights under C.C. 1303.06 and the Ohio and Federal Constitutions. Appellants sought a mandatory injunction requiring appellees to begin refuse collection services required by law and alleged that they had no adequate remedy at law.
To be entitled to the extraordinary equitable remedy of a mandatory injunction, the moving party must establish that a vested right has been abridged, infringed upon or eliminated. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141, 153. The moving party must also show by clear and convincing evidence that immediate and irreparable harm will result and that no adequate remedy at law exists. Lemley v. Stevenson
(1995), 104 Ohio App.3d 126, 136. Irreparable injury is one for which there is no plain, adequate and complete remedy at law, and for which money damages would be impossible, difficult or incomplete.Cleveland v. Cleveland Elec. Illum. Co. (1996), 115 Ohio App.3d 1, 12.
In support of their claim for mandatory injunction, appellants rely onRoyal Am. Corp. v. City of Euclid (Aug. 15, 1974), Cuyahoga App. No. 33353, unreported ("Royal American I"). In Royal, the trial court found that city officers had abused their discretion when they discontinued refuse service to plaintiff, an apartment complex, in spite of a city ordinance that provided for the general collection of refuse. In affirming this portion of the trial court's judgment, the Eighth District Court of Appeals found that the mayor and service director could not promulgate a rule establishing categories and classifications of those to be provided refuse service and that, if such a designation was to be made, the Euclid City Council was required to do so by ordinance. The trial court granted a mandatory injunction to the plaintiff, requiring it be provided refuse service until such time as council passed the appropriate ordinance.
After the court's ruling in Royal American I, the city of Euclid passed an ordinance which provided that the city would not provide refuse collection services to apartments, condominiums or commercial structures. In Royal Am. Corp. v. Euclid (Aug. 21, 1975), Cuyahoga App. No. 34018, unreported ("Royal American II"), the Eighth District Court of Appeals found no rational basis for the classifications in the ordinance or the city's decision to provide refuse collection for one and two family dwellings but not multiple family dwellings. Unlike the city of Euclid, appellee has not refused to provide service or create classifications of groups to be served, but has offered dumpster service which appellants rejected.
As discussed above, whether the provision of dumpster service only to appellants is feasible or tantamount to a refusal to provide service is an issue to be decided by the trial court.
Although not raised by the parties, this court finds the issue of irreparable harm determinative. The only harm appellants have identified presently from appellees' failure to fulfill their duty to collect appellants' refuse is the financial costs they have incurred paying a private refuse removal company to remove their refuse. This harm may be completely remedied through an award of money damages.
For the above reasons, this court finds, as a matter of law, that appellants are not entitled to a mandatory injunction and the trial court properly awarded summary judgment as to appellants' claim for injunctive relief.
In addition to their common-law based claim for injunctive relief, appellants also sought injunctive relief and money damages under Section 1983, Title 42, U.S.Code. Appellants argue that appellees' refusal to provide them with ninety-gallon service violates their equal protection rights. In support of this argument, appellants note that other condominium associations that applied for city refuse service in 1995 received ninety-gallon service, including Bethel Village, a condominium association with an identical physical layout, built by the same builder as appellants.
Appellants do not allege that a city ordinance creates a classification and is facially unconstitutional; instead, they argue that, as applied, C.C. 1303.06 creates a classification that has no rational basis and results in disparate treatment. Specifically, appellants contend that they were denied ninety-gallon container service while similarly situated condominium communities received ninety-gallon container service.
"The guarantee of equal protection of the laws means that 'no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances.'" Cahill v. Lewisburg (1992), 79 Ohio App.3d 109, 115. The rational basis standard that appellants rely on is used when a statutory classification that does not involve a fundamental right or suspect class is challenged. Fabrey v. McDonald Police Dept. (1994), 70 Ohio St.3d 351, 353. However, appellants do not challenge a statutory classification in an ordinance as in Royal American II, instead, they challenge its application. A different standard is applied when a party argues that a law that is fair and impartial on its face is applied in a manner that improperly discriminates between similarly situated persons. Divergent application of the law does not automatically violate the equal protection guarantee; in this situation, there is no denial of equal protection unless an element of intentional or purposeful discrimination is shown. Snowden v. Hughes
(1944), 321 U.S. 1; Cahill, at 116.
Appellants have not alleged any intentional or purposeful discrimination on the part of appellees, nor is there any evidence in the record of a discriminatory motivation. Because there is no evidence creating an issue of material fact as to the crucial element of intentional or purposeful discrimination, as a matter of law, the trial court properly granted summary judgment as to appellants' claims founded on a denial of equal protection.
The trial court properly granted summary judgment as to appellants' claims for declaratory and injunctive relief and monetary damages based on common law and Section 1983, Title 42, U.S.Code. However, the trial court improperly granted summary judgment as to appellants' claims for mandamus relief. Accordingly, appellants' assignment of error is sustained in part and overruled in part, and the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this decision.
Judgment affirmed in part and reversed in part, cause remanded.
LAZARUS, P.J., and BROWN, J., concur.