OPINION
This appeal arises out of a trial court decision granting summary judgment in favor of Appellees based upon immunity pursuant to R.C. Chapter 2744. For the following reasons, this Court affirms the trial court judgment.
On December 7, 1994, Appellant, Fred Abdalla filed a complaint against Appellees, Jefferson County Commissioners Albert Olexia and David Hindman and Jefferson County Prosecutor Stephen Stern as individuals and the Jefferson County Commissioners' and Prosecutor's offices. Appellant alleged that while serving as the duly elected sheriff of Jefferson County, on June 19, 1990, a federal grand jury indicted him on charges of extortion and obstruction of justice, alleging that he accepted money to disregard his official duties as sheriff and allowed illegal gambling businesses to operate. According to Appellant, the allegations against him surrounded actions that he conducted in a good faith attempt to carry out his duties as sheriff.
Appellant states that he approached the prosecutor about legal representation in the federal criminal matter as the prosecutor is the legal adviser of all county officials pursuant to R.C. § 309.09. Appellant claims that Prosecutor Stephen Stern informed him that he was unable to represent Appellant and told Appellant to seek independent counsel at his own cost. Appellant retained representation at his own cost and subsequently requested reimbursement from the county commissioners for these legal expenses after he was acquitted on the federal charges. Appellant claims that the commissioners requested the prosecutor's legal advice as to whether they should reimburse Appellant as he requested. The prosecutor submitted two legal opinions providing the law as set forth in R.C. § 309.09 and R.C. § 305.14. Despite Appellant's assertions that the commissioners never came to a decision on his request, the minutes of a commissioners' meeting reflects that they voted two to one not to reimburse the fees.
Appellant filed his complaint on December 7, 1994, asserting various causes of action against Appellees for their claimed failure to conduct their official duties. These claims include violations of Appellant's constitutional rights, intentional and negligent infliction of emotional distress and bad faith, malicious purpose and recklessness in Appellees' actions. Appellant specifically alleged that Prosecutor Stern and his office were involved in undercover operations with the federal authorities against Appellant at this time and failed to reveal their involvement, which he claims was a conflict of interest. Appellant asserted that he incurred costs for retaining independent counsel as neither the prosecutor nor his office informed Appellant that he had a legal right to have independent counsel appointed to him or to have his representation costs reimbursed. Appellant also challenged the commissioners' delay in determining whether he was acting in good faith in his official duties so as to warrant appointment of counsel and reimbursement for his retention of independent counsel. Appellant sought reimbursement for his attorney fees in the federal criminal prosecution and attorney fees for maintaining the present civil action as well as other damages.
On January 6, 1995, Appellees filed a motion to dismiss Appellant's complaint for failure to state a claim upon which relief could be granted. Appellees alleged that Appellant, in essence, untimely asserted his claims regarding a right to reimbursement and had waived this right by not pursuing it in the proper manner and within the statute of limitations.
On February 24, 1995, the trial court granted Appellees' motion to dismiss, finding that the challenges to the prosecutor's denial of his request for counsel and the claim for reimbursement of his legal fees after the federal prosecution concluded was untimely. The court further found that the claims regarding conflict of interest and failure to advise failed as a matter of law because no authority existed for such arguments. Appellant timely appealed the decision.
On August 30, 1996, this Court reversed and remanded the matter. We found that while the two year statute of limitations period set forth in R.C. § 2744.04(A) applied, a question remained as to when Appellant knew or should have known of the allegedly contradictory position of the prosecutor. We remanded for a determination as to the date that Appellant knew or should have known that the prosecutor's advice to him was allegedly inaccurate. Appellant's other asserted issues on appeal were not addressed.
On January 7, 1997, the trial court overruled a summary judgment motion filed by Appellees asserting that Appellant's claim was barred by the statute of limitations. The court found that the earliest reasonable time that Appellant could have or should have known that he had a claim based upon the prosecutor's advice was February 16, 1993, when Appellant first reviewed the prosecutor's memorandum to the commissioners concerning the law regarding independent counsel and reimbursement.
On April 1, 1997, Appellees filed an answer to Appellant's complaint. On that same date, Appellees filed another motion for summary judgment. Appellees asserted that Appellant's claims were barred as a matter of law by the doctrines of absolute and qualified immunity pursuant to R.C. Chapter 2744. Appellees contended that the decision not to represent the sheriff in his federal criminal prosecution was within the prosecutor's and commissioners' discretion, as was the decision not to appoint independent counsel and not to reimburse Appellant for his representation costs. Appellant submitted that this was a governmental function under R.C. § 2744.01(C)(1)(f) and thus, the officials were immune for exercising this discretion in their official capacities. Appellees also cited R.C. § 2744.03 to assert that the individual county officers enjoyed qualified immunity as they were acting within their official capacities in making a discretionary decision. Appellees then asserted that Appellant could not establish that a statutory or constitutional right was violated by any Appellee or that any of the Appellees acted recklessly, in bad faith or wantonly in their decision-making capacities.
On April 25, 1997, Appellant filed a response to the motion for summary judgment asserting that genuine issues of material fact existed to preclude summary judgment on each proposition asserted by Appellees. Appellant contended that the prosecutor's acts were reckless and fraudulent and so, were not protected by immunity. He argued that the prosecutor was aware of the duties set out by R.C. §§ 309.09 and 305.14 but did not inform Appellant about these statutes or the legal procedures by which he could obtain independent counsel. Appellant also alleged that the prosecutor deliberately and intentionally misinformed him that he had to hire his own counsel. Appellant also submitted that the prosecutor's advice to Appellant and the commissioners was an administrative act, as such, was only entitled to qualified immunity.
Appellant further asserted that genuine issues existed as to the issue of whether Appellees violated his claimed constitutional right to be informed of his statutory rights and whether his rights were violated by all Appellees when they failed to apply to the common pleas court for appointed counsel on his behalf. Appellant also contended that the commissioners acted recklessly and fraudulently in failing to decide whether Appellant acted in good faith in carrying out his official duties so as to warrant independent counsel or to warrant reimbursement of his attorney fees for the criminal matter. Appellant attached no documentation to support his assertions but cited caselaw and his deposition testimony and that of Prosecutor Stern.
Appellees filed a reply to Appellant's response and attached caselaw and the minutes of the commissioners' meeting where the commissioners voted two to one to deny Appellant's request for reimbursement. Also before the court was the deposition testimony of Appellant and Appellee Stern.
On June 25, 1997, the trial court granted Appellees motion for summary judgment and dismissed Appellant's claims against all Appellees. The court relied on Jarvis v. Slaby (Nov. 13, 1986), Summit App. No. 12116, to determine that the prosecutor was acting in his capacity as an attorney in deciding that he could not represent Appellant on charges of felony conduct in office. The court noted that Jarvis, supra distinguished a quasi-judicial function from an administrative function by asking whether the prosecutor's act was one that could have been performed by a layperson as opposed to an attorney. The court also found no bad faith on the part of the prosecutor in the rendering of that decision and that the prosecutor's failure to advise Appellant of the procedure to obtain independent counsel or reimbursement did not rise to the level of bad faith. The court further found that the prosecutor's involvement with the federal investigation and the failure to disclose this to Appellant was not a genuine issue of material fact and that no authority existed for Appellant's arguments that he had some "constitutional right" to be informed of his statutory rights.
As to the commissioners, the court found the evidence undisputed that the commissioners did act on Appellant's request for attorney fees, as the minutes of a meeting reflected a vote against complying with the request. The court further held that Appellant failed to meet the standard for overcoming the immunity of the commissioners as there was no proof that their acts or omissions were wanton, malicious and reckless.
Appellant filed this timely appeal raising eight assignments of error. In all of his assignments of error, Appellant asserts that the trial court committed prejudicial error and abused its discretion in granting summary judgment. We will group and address Appellant's assignments of error by commonality of basis in law.
Appellant raises the following assignments of error relating to the immunity of Appellees:
 "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION WHEN IT HELD THE DEFENDANTS ARE ENTITLED TO IMMUNITY GRANTED THEM SUMMARY JUDGMENT BECAUSE ARE GENUINE ISSUES OF MATERIAL FACT STERN ACTED RECKLESSLY WHEN HE GAVE ABDALLA INCORRECT AND MISLEADING LEGAL ADVICE SEEK INDEPENDENT COUNSEL.
 "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION WHEN IT HELD STERN'S ACTS WERE ACTS AND TO STERN ABSOLUTE IMMUNITY.
"* * *
 "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION IN GRANTING THE COMMISSIONERS SUMMARY JUDGMENT BASED UPON IMMUNITY WHEN GENUINE ISSUES OF MATERIAL FACT EXIST TO ARGUE THAT THE COMMISSIONERS ACTED IN A WANTON AND RECKLESS MANNER.
 "VI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION IN GRANTING THE DEFENDANTS SUMMARY JUDGMENT BASED UPON IMMUNITY BECAUSE GENUINE ISSUES OF MATERIAL FACTS EXIST TO PROVE THAT THE DEFENDANTS' DELAYS OR FAILURE TO ACT DESTROY THEIR IMMUNITY SHIELD."
 "VII. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION IN GRANTING THE DEFENDANTS SUMMARY JUDGMENT BASED UPON IMMUNITY WHEN THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER THE DEFENDANTS ACTED IN A FRAUDULENT MANNER WHICH WOULD PRECLUDE SUMMARY JUDGMENT."
 "VIII. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION IN GRANTING THE DEFENDANTS SUMMARY JUDGMENT BASED UPON IMMUNITY WHEN THERE EXIST GENUINE ISSUES OF MATERIAL FACTS ABOUT WHETHER THE DEFENDANTS ACTED IN GOOD FAITH WHICH IS A PREREQUISITE TO IMMUNITY."
The determination as to whether a political subdivision is immune from suit is purely a question of law properly determined by a court prior to trial and preferably on a motion for summary judgment. Conley v. Shearer (1992), 64 Ohio St.3d 284, 292, quoting Donta v. Hooper (C.A.6, 1985), 774 F.2d 716, 719, certiorari denied (1987), 483 U.S. 1019, and citing Roe v.Hamilton Cty. Dept. of Human Serv. (1988), 53 Ohio App.3d 120,126. In summary judgment proceedings, the movant has the initial burden of informing the trial court of the basis for its motion and must identify the parts of the record that show that no genuine issue of material fact exists as to the essential elements of the opposing party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once this initial burden is met, the opposing party has a reciprocal burden to show specific facts that demonstrate that a genuine issue exists for trial. Id.
Civ.R. 56 (C) provides that a court may not grant summary judgment unless it determines that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. Stateex rel Hipp v. City of North Canton (1996), 75 Ohio St.3d 221,222 citing State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589.
This Court has held that Civ.R. 56 (C) requires that a court grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to sufficiently show the existence of the essential elements on which that party will bear the burden of proof at trial. Lovejoy v. Westfield Nat. Ins. Co.
(1996), 116 Ohio App.3d 470, 474, citing Dresher v. Burt (1996),75 Ohio St.3d 280. To defeat a summary judgment motion, the nonmovant must present some evidence which does raise a genuine issue of material fact. Nice v. Marysville (1992), 82 Ohio App.3d 109,116. If such evidence is not provided, the motion for summary judgment should be granted. Id.
In reviewing summary judgment proceedings, an appeals court reviews the evidence de novo, but in the same manner as the trial court. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588. Thus, an appellate court undertakes the same standard of review as the trial court and does not defer to its decision.
R.C. § 2744.02(A)(1) provides general immunity for political subdivisions (including counties under R.C. § 2744.01(F)) in connection with proprietary and governmental functions. That section states:
 "(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to a person or property allegedly caused by an actor omission of the political subdivision in connection with a government or proprietary function."
The legislature defines a "governmental" function in R.C. § 2744.01(C)
 "(C)(1) `Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfied any of the following:
 "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 "(b) A function that is for the common good of all citizens of the state;
 "(c) A function that promotes or preserves the public peace, health, safety, or welfare, that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
 "(2) A `governmental function' includes, but is not limited to, the following:
"* * *
 "(f) Judicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functions;
"* * *
"(i) The enforcement or nonperformance of law;
"* * *
 "(w) A function that the general assembly mandates a political subdivision to perform."
R.C. § 2744.02(B) also provides exceptions to the blanket immunity set out in subsection (A), which exceptions allow political subdivisions to be held liable for certain acts or omissions, most of which surround proprietary acts and none of which are relevant to any of the allegations here.
R.C. § 2744.03 then provides an additional cloak of immunity and certain defenses for a political subdivision, even as against the exceptions to immunity found under R.C. § 2744.02(B). This section states, in relevant part:
"2744.03 Defenses and immunities
 "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability;
 "(1) The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.
 "(2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.
 "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
"* * *
 "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 "(c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee.
 "(7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.
 "(B) Any immunity or defense conferred upon, or referred to in connection with, an employee by division (A)(6) or (7) of this section does not affect or limit any liability of a political subdivision for an act or omission of the employee as provided in section 2744.02 of the Revised Code."
In reviewing R.C. § 2744.03, it is important to remember that the broad array of defenses to liability provided by this section do not, in fact, set up additional exceptions to general immunity, as ". . . the defenses set forth in R.C. § 2744.03 are only relevant where the plaintiff demonstrates that the governmental function at issue comes under a specific exception to general immunity." Feitshans v. Darke County, Ohio (1996),116 Ohio App.3d 14, 22 citing Hill v. Urbana (Aug. 6, 1995), Champaign App. No. 94-CA-22, unreported. In other words, R.C. § 2744.02(A) sets up broad, general immunities for political subdivisions, § 2744.02(B) sets out certain exceptions to these and R.C. 2744.03 provides additional immunities and defenses to the exceptions.
In its request for summary judgment, Appellees asserted the blanket immunity protection of R.C. Chapter 2744 as to each office and as to each individual officer or employee acting in their official capacities. Appellees pointed specifically to R.C. § 2744.01(C)(1)(a) and (C)(2)(f) to maintain that the decision to determine appointment of outside legal counsel to Appellant for his criminal prosecution, the decision to determine if Appellant was carrying out a well-intended official duty of his office when he was criminally charged and the decision whether to reimburse him for attorney fees incurred in the criminal prosecution were discretionary, governmental, quasi-judicial (for Appellee Stern and the prosecutor's office) and legislative (for Appellee commissioners) decisions requiring immunity.
Appellees further cited R.C. §§ 2744.03(A)(6) and (7) for support that government employees sued individually are immune from liability in performing their discretionary functions as government officials so long as their conduct did not violate clearly established statutory or constitutional rights. Further, Appellees submitted that Appellant could not provide evidence that any of the Appellees acted with malicious purpose, in bad faith, or in a reckless or wanton manner.
In these arguments, Appellees met their initial burden on summary judgment pursuant to the Civil Rules. It is apparent from the record that there is no factual dispute here. Appellant was criminally charged, Appellee Stern was asked by him to represent Appellant in the criminal matter and Appellee Stern refused. Appellee Stern told Appellant to seek his own legal counsel at his own personal expense. Appellee Stern had some knowledge of the criminal investigation against Appellant at the time. Appellee Stern advised Appellee Commissioners as to the bare-bones obligations imposed by statute on a county prosecutor and, at a much later date, Appellee Commissioners voted against reimbursing Appellant the costs of his criminal prosecution. This vote was by a two to one margin, with the named Appellee Commissioners voting against reimbursement. These facts are laid out by the parties' pleadings and memorandums to the court below and evidenced in the deposition transcripts and minutes of the relevant commission meetings. The parties acknowledge these facts as true in their briefs in this matter. The only difference between the parties' interpretation of the above agreed facts is their characterization of these is that Appellant is claiming these actions were all malicious, reckless and wanton and Appellees are all disputing this characterization. Regardless, it is clear to this Court from a review of the record that no facts are in dispute, here.
Once Appellees met the threshold requirements for obtaining summary judgment, Appellant then had the burden to assert facts to show that his claims fell under a R.C. § 2744.02(B) exception to the bar of immunity granted by way of R.C. § 2744.02(A)(1). Appellant begins his response to the summary judgment motion by arguing that R.C. § 2744.03(A)(6)(b) applies because Appellees Stern and the Prosecutor's office acted recklessly, in bad faith and with malicious purpose in "misinforming" him about his right to counsel. Appellant further alleged that R.C. § 2744.03(A)(6) (b) applies to the commissioners because they acted recklessly, wantonly, with malicious purpose and in bad faith in not appointing him legal counsel and in failing to come to a final decision as to whether he should be reimbursed for his expenses in retaining his own criminal defense counsel.
Appellant's argument that R.C. § 2744.03 applies as an additional exception to pierce the blanket of absolute immunity provided under R.C. § 2744.02 is incorrect. As earlier stated, R.C. § 2744.03 does not provide exceptions to the blanket immunity mandated by R.C. § 2744.02. Only those exceptions found in R.C. § 2744.02(B) provide this ability. R.C. § 2744.03 provides defenses to liability, only, and cannot be used to establish liability. Cater v. City of Cleveland, (1998), 83 Ohio St.3d 24,32 citing Hill v. Urbana (1997), 79 Ohio St.3d 130, 135. The defenses and immunities found in R.C. § 2744.03 therefore do not come into play until after it is proven that a specific exception to general immunity applies under R.C. § 2744.02(B). SeeFeitshans, supra. Thus, Appellant is mistaken in those R.C. § 2744.03 arguments that are used to try to impose liability in this manner. Appellant must first establish an exception to immunity under R.C. § 2744.02(B)(2). This he has failed to do.
As we have earlier noted, none of the exceptions to general immunity applies to the matter before us. R.C. § 2744.02(B) states that, subject to the defense and immunities of R.C. § 2744.03, political subdivisions are liable for negligent operation of a motor vehicle (with more exceptions), negligence with respect to certain action or inaction as regards roads or bridges, physical defects in certain grounds and buildings and where liability is expressly imposed in certain other specific sections of the Revised Code, and then only in certain limited instances.
Appellant does not raise or argue any duty or liability imposed by specific sections of the Revised Code as anticipated within R.C. § 2744.02(B). Appellant appears to attempt to rely on R.C. § 2744.02(B)(2), which states that:
 "(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
Such reliance overlooks the most obvious, in fact glaring, deficiency in Appellant's argument, which is that none of the actions or inactions he complains of are proprietary in nature. All of the actions involved in the suit here are governmental. This is true because R.C. § 2744.01(G) defines a "proprietary function" as one which cannot be defined as "governmental" and which promotes the public peace, health, safety or welfare. Specifically, the section provides that proprietary functions include operating hospitals, sewer systems, public buildings and utilities.
Thus, all of the decisions made by Appellees and complained of here were governmental and not proprietary functions as they meet the definition of governmental function under R.C. §§ 2744.01(C) (1)(a) and (C)(2)(f). The prosecutor's decision to represent (or not) a county official and whether to appoint him independent counsel as well as the rendering of a legal opinion as to the law on such a matter is a function imposed as an obligation of sovereignty and is performed pursuant to R.C. §§ 309.09 and305.14. The actions are also "prosecutorial" functions which fall under R.C. § 2744.01(C)(1)(f).
In Willitzer v. McCloud (1983), 6 Ohio St.3d 447, 449, the Ohio Supreme Court held that:
 "* * * prosecutors are considered `quasi-judicial officers' entitled to absolute immunity granted judges, when their activities are `intimately associated with the judicial phase of the criminal process.' Imbler v. Pachtman (1976), 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. Imbler held that a prosecutor has absolute immunity `* * * in initiating a prosecution and in presenting the State's case * * *'. Id. at 431. However, `absolute immunity' does not extend to a prosecutor engaged in essentially investigative or administrative functions. Dellums v. Powell (C.A.D.C. 1981), 660 F.2d 802, 805, and cases cited therein. While performing these functions, he is entitled to only a qualified immunity."
Ohio courts have upheld the use of the test set forth in Jarvisv. Slaby (Nov. 13, 1986), Summit App. No. 12116, unreported, in determining the liability of a prosecutor. In Bender v. Diemert, the Eighth District Court of Appeals applied the Jarvis test and determined that when the test was met, a prosecutor is absolutely immune from liability as a matter of law. (Apr. 22, 1993), Cuyahoga App. No. 62206, unreported. The Jarvis test asks whether the prosecutor's activity at issue could be performed by a layman to determine whether the actions are investigative and administrative or are prosecutorial in nature. Jarvis, supra.
The prosecutor's decision not to represent Appellant in his federal criminal prosecution and the legal opinions submitted to the commissioners by the prosecutor are functions imposed pursuant to R.C. § 305.14 and are not acts that are customarily engaged in by nongovernmental persons. The decision whether to represent a person accused of a crime is an act, ". . . intimately associated with the judicial phase of the criminal process."Imbler v. Pachtman (1976), 424 U.S. 409.
We also hold that the Appellee commissioners are immune as a matter of law pursuant to R.C. §§ 2744.01(C)(1)(a) and (C) (2) (f). Their decision to not reimburse Appellant for his costs for independent counsel was a function imposed as an obligation of sovereignty and performed pursuant to R.C. § 305.14.
Additionally, Appellant's argument as to the application of R.C. § 2744.09(B) to preclude Appellees' immunity is without merit. R.C. § 2744.09(B) states as follows:
 "This chapter does not apply to, and shall not be construed to apply to, the following:
"* * *
 "(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision."
Appellant's argument surrounding this section is without merit for two reasons. First, although Appellant asserted in his complaint that an employment relationship existed and that his dispute with Appellees arose over contractual liability, Appellant did not assert this R.C. § 2744.09(B) argument in his motion in opposition to Appellees' motion for summary judgment or at any other relevant time, below. In fact, Appellant did not make this argument until oral argument before this Court. Appellant alleges in a supplemental brief filed with this Court that because he referred to the employment relationship and contractual liability in his complaint, the trial court had a duty to apply R.C. § 2744.09(B) automatically without any reference from Appellant. This is incorrect. Appellant waived his right to assert R.C. § 2744.09(B) because he failed to meet his reciprocal burden of coming forward with evidence to demonstrate that a genuine issue of material fact existed on the issue of immunity. He did not raise the R.C. § 2744.09(B) argument below in summary judgment and cannot rely on mere pleadings to meet his reciprocal burden. Dresher, supra.
Secondly, courts have held that political subdivisions are immune from intentional tort claims as R.C. § 2744.02(B) contains no specific exceptions for intentional torts and an intentional tort occurs outside of the employment relationship and does not arise from such a relationship. Ventura v. City of Independence
(May 7, 1998), Cuyahoga App. No. 72526, unreported; Wilson v.Stark Cty. Dept. of Human Services (1994), 70 Ohio St.3d 450;Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624; Ellithorpv. Barberton City School District Board of Education (July 9, 1997), Summit App. No. 18029, unreported, Farra v. Dayton (1989),62 Ohio App.3d 487. As Appellant argues Appellees' intentional conduct in allegedly misinforming him of his rights regarding legal representation and in the delays in deciding the issue of reimbursement, R.C. § 2744.09(B) has no application.
We must also note, here, that we find it difficult to believe that an elected official could provide any evidence of an "employment" relationship with the political subdivision whose population elected him. Regardless, Appellant did not raise this evidence before the trial court. Thus, we determine from the record that the Appellee Commissioners, Appellee Stern and the prosecutor's office are absolutely immune from liability as to all of Appellant's claims against them as officers of the political subdivision.
With regard to the claims against Appellees as individual employees, we must look at and consider R.C. § 2744.03. Under R.C. § 2744.03, in addition to the blanket immunity enjoyed by the political subdivision, an individual employee is granted immunity in performing a governmental or proprietary function unless one of the following applies: (a) his acts or omissions were manifestly outside the scope of his employment or official responsibilities, (b) his acts or omissions were with malicious purpose, in bad faith, or conducted in a wanton or reckless manner, or (c) liability is expressly imposed upon the employee by another section of the Revised Code. R.C. § 2744.03(A)(6) (a-c); Harris v. Kennedy (1996), 116 Ohio App.3d 687, 691.
When looking at Appellees' supposed individual liability as the elected official involved here, it is axiomatic that no liability for any injury exits without a duty which exists and breach of that duty which proximately causes damage to a given defendant. Here, Appellant sets up the same two statutes in an attempt to establish some "duty" owed him by Appellees. In so doing, Appellant overlooks two things: 1) no "duty" is owed him by any Appellee which can be found in law and 2) the "duty" he is alleging, if it existed, it existed only in Appellees' exercise of their official capacities and hence, R.C. § 2744.03(A)(6) is inapplicable.
In his attempt to hold the Appellees liable, Appellant claims that through R.C. §§ 309.09 and 305.14, some absolute duty was owed him by Appellees. With this premise, Appellant then argues that because there was some mandatory duty for representation owed, the failure to provide it or to reimburse fees incurred for representation rises to the level of reckless, wanton and malicious behavior. As Appellant is mistaken in his threshold premise, his entire argument fails.
No Appellee owed Appellant any absolute duty to represent or pay for legal representation for Appellant's federal criminal prosecution. A review of the federal indictment, in the record here, shows that Appellees are correct in their assertions that they could have easily determined the allegations against Appellant in no way arose from the well-intentioned acts of Appellant in fulfilling the duties of his position. This determination would not be relevant however, because the statutory sections cited by Appellant to establish some mandatory duty owed him do not, in fact, establish any duty.
R.C. § 309.09 does provide that the county prosecutor "shall be" legal advisor to county officers. This section also states that this representation is, ". . . in matters connected with their official duties." Thus, the "duty" of representation is not absolute and the language of the statute allows for discretionary decision-making in a county prosecutor; he must determine whether the official is seeking representation in connection with his or her "official duties". Needless to say, if the duty sought to be imposed allows for some discretion in its application, this "duty" is in no way absolute. Likewise, R.C. § 305.14 only provides an avenue by which a prosecutor and a board of county commissioners may apply to a common pleas court for additional legal counsel. This section does not impose a duty to so apply. Again, this assistance must be for legal representation of an elected officer sued in his or her official capacity.
Thus, as the Appellees here had no mandatory duties to represent or provide representation to Appellant, but instead were permitted some discretion in this, Appellant's basic premise that the failure to provide representation or inform him that he was somehow entitled to representation at county cost amounts to reckless, wanton or malicious behavior must fail. Likewise, his premise that the commissioners owed him some duty also fails. See also, State ex rel. Stamps v. Automatic Data Processing (1990),42 Ohio St.3d 164, 167, where the Supreme Court finds that there is no duty to apply for representation on the part of the prosecutor and commissioners even where failure to do so might constitute an abuse of discretion in another context.
Hence, Appellant did not establish a duty owed him by Appellees, assuming they could possibly be liable in their individual capacities. Since no duty is owed, no breach of this "duty" exists. For purposes of an attempt to establish individual liability on Appellees despite their official immunities, it matters little whether Appellees acted maliciously or in bad faith in refusing to provide an attorney or reimburse for fees to Appellant. If no duty to do so exists in their individual capacities, no liability can be established.
Conversely, if a "duty" can be said to exist, here, it exists only in the use of Appellees' discretion in their official roles as decision makers. Despite Appellant's protests of complete inaction, the record establishes that the commissioners did vote in an open meeting not to reimburse Appellant's attorney fees for his criminal prosecution. Appellant acknowledges this in his failure to name the third commissioner, the one who voted in his favor, as a party defendant to this lawsuit. Therefore, there is no question of fact that the commissioners acted on his request, and since their alleged inaction was the basis for suit, Appellant's claims against Appellee Commissioners as individuals fail.
Appellant's individual claims against Appellee Stern are likewise misplaced. Appellant contends that Appellee Stern knew Appellant was being federally investigated for his purported criminal activity. Appellant uses this knowledge to attempt to claim "bad faith" in the prosecutor's decision not to defend or appoint defense counsel in his criminal prosecution. Appellant claims that as Appellee Stern knew he had some "duty" pursuant to statute, evidenced by the prosecutor's advice to the commissioners, Stern acted maliciously, wantonly and recklessly in providing "incorrect" advice that Appellant should seek his own counsel and in failing to advise Appellant to seek outside representation through the commissioners and the common pleas court. As earlier discussed, no absolute "duty" to represent or obtain outside counsel for Appellant exists. At best, the application of the statutes is discretionary.
Thus, while the record reflects that Appellant might establish in Appellee Stern in his official capacity an abuse of his official discretion at the most, Appellee Stern is absolutely immune in his official capacity, as earlier stated. To reduce Appellant's claims to their simplest terms, without an absolute duty to advise or defend Appellant on the part of Appellee Stern as county prosecutor, it cannot be in bad faith, reckless, wanton or malicious not to do so. Thus, Appellee Stern also cannot be held in his individual capacity under R.C. § 2744.03(A)(6).
We can see from the record that no dispute exists as to any factual matter. Thus, for the foregoing reasons, summary judgment was proper on all of the Appellees' claims regarding immunity. Appellant's assignments of error I, II and V through VIII are without merit.
In his third assignment, Appellant argues:
 "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BECAUSE THE DENIAL OF PAYMENTS BY THE COMMISSIONERS TO THE PLAINTIFF REPRESENTS A DENIAL OF THE EQUAL PROTECTION CLAUSES OF BOTH THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION."
Appellant argues, in a more cohesive manner than argued below, that the two named county commissioners violated his equal protection rights by paying for a judge's legal fees and refusing to pay for his. He claims that he is in the exact same position as this judge and thus, the commissioners were compelled to reimburse him his fees.
Again, Appellant's arguments are based in R.C. §§ 309.09 and305.14. We have discussed the discretionary nature of these sections, above. Based on this discretionary ability and on the fact that Appellant failed to provide any evidence below to substantiate this claim, Appellant's third assignment of error also fails.
Appellant claims that the unequal application of these statutes by the commissioners rises to the level of a constitution violation. As noted by the Appellees, the unequal application of laws which appear facially neutral will not amount to a violation of the Equal Protection Clause of the Fourteenth Amendment unless intentional or purposeful discrimination is shown, because the elected officials good faith administration of the law is presumed, Aurora v. Sea Lakes, Inc. (1995), 105 Ohio App.3d 60. Further, the clause does not completely forbid the unequal classification of persons. As Appellant himself points out, a violation only occurs when elected officials treat persons differently if those persons, ". . . are in all relevant respects alike." Nordlinger v. Hahn (1992), 112 S.Ct. 2326, 2331 citingF.S. Royster Guano Co. v. Virginia 253 U.S. 412, 415 (1920).
Appellant claims, in short, that the commissioners allowed a common pleas judge to be reimbursed his attorney fees involved in defending a writ of prohibition even though they refused to reimburse Appellant and that the judge's matter and Appellant's matter are identical. Appellant is again mistaken.
First, in this summary judgment action, all the court below had before it relevant to this matter were copies of legal opinions alluding to the judge's matter, albeit briefly and indirectly. Appellant submitted nothing further relevant to this issue.
It is clear from the record below as it stands that a judge, seeking reimbursement for fees incurred when he was named in a writ of prohibition and a sheriff, sued in a federal court for violations of criminal law, are not identically situated. The matters are not even remotely similar. Even if Appellant had raised some statutory duty in Appellees, the law is clear that individuals who are not similarly situated can raise no equal protection claim when they are not treated equally. Shockey v.Winfield (1994), 97 Ohio App.3d 409.
Appellant's third assignment of error must fail.
In his fourth assignment, Appellant states:
 "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT THE DEFENDANTS VIOLATED OR MALICIOUSLY INTERFERED WITH ABDALLA'S STATUTORY AND CONSTITUTIONAL RIGHTS."
In this assignment, Appellant again relies on his premise that R.C. §§ 309.09 and 305.14 provided some "duty" which was owed him by Appellees and claims that violation of the "duty" rises to the level of a constitutional deprivation. Once again, Appellant is mistaken in his premise and thus, in his argument.
As extensively discussed above, the two sections of the Revised Code relied on by Appellant provide no absolute duty which was owed. These sections, individually and together, allow for discretion on the part of the Appellees. As earlier stated, Appellant had no mandatory rights provided by these statutes.
Further, Appellant fails to articulate in any fashion, either to this Court or below, what constitutional violation would be incurred even if we may assume a statutory duty. This Court will not draft Appellant's arguments for him in this matter. Without any citation to any relevant constitutional right or corresponding deprivation, Appellant's argument as to this assignment must fail.
For all of the foregoing, the assignments of error advanced by Appellant are found to be without merit and the decision of the trial court herein is affirmed.
Vukovich, J., Cox, P.J., concurs.
APPROVED:
 _________________________ CHERYL L. WAITE, JUDGE